David HOPPER, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 13A01–1002–PC–41.

Court of Appeals of Indiana.

April 28, 2010.

Transfer Granted July 30, 2010.

Bart M. Betteau, Betteau Law Office, LLC, New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

David Hopper appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for Class A misdemeanor operating while intoxicated ("OWI"). We reverse and remand.

### Issue

The sole issue is whether the post-conviction court properly concluded that Hopper knowingly and intelligently waived his right to counsel before pleading guilty to the OWI charge.

### Facts

On April 18, 2005, the State charged Hopper with one count of Class A misdemeanor OWI and one count of Class C misdemeanor operating a vehicle with a blood alcohol content of .08% or more. The trial court also conducted an initial hearing on that date. At that time, Hopper was given a boilerplate document titled, "Your Rights in Court." App. p. 46. Among other things, it advised Hopper, "You have the right to be represented by an attorney now, and at every stage of the court proceedings. If you want an attorney and cannot afford one, tell the Judge. If the case is serious enough, the Judge will appoint a Public Defender to help you at public expense." *Id.* On the back of the document, Hopper signed a section named, "Waiver of Attorney." *Id.* at 47. This section said in part, "I know that if I am without funds and the case is serious enough, the Judge will appoint a Public Defender to represent me. I freely and voluntarily give up my right to be represented by an attorney." *Id.*

Hopper subsequently entered into plea negotiations with the State. On May 19, 2005, he appeared in court to plead guilty to the OWI charge. At that time, the trial court said to Hopper, "You also have a right to be represented by an attorney now and at any later time. If you cannot afford an attorney, the Court will appoint one to represent you. And you want to proceed without an attorney is that correct?" App. p. 50. Hopper responded, "Yes." *Id.* This was the full extent of the trial court's examination of Hopper's waiver of counsel. Hopper then admitted to the factual basis for the OWI charge, and the trial court accepted the plea and sentenced Hopper accordingly.

On July 30, 2009, Hopper, now represented by counsel, filed a PCR petition. It alleged that his waiver of counsel before pleading guilty was not knowing and intelligent. At the post-conviction hearing, Hopper testified that he did not graduate from high school, having dropped out after his sophomore or freshman year, and that he did not understand some of the terminology in the "Your Rights in Court" form. There also was evidence that in 2000 Hopper was convicted of a traffic offense of some kind—precisely what offense the record does not reveal—which had resulted in a license suspension; Hopper was not represented by counsel in the 2000 case either. On November 6, 2009, the post-conviction court denied the PCR petition. Hopper now appeals.

### Analysis

"In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence." *Stephenson v. State,* 864 N.E.2d 1022, 1028 (Ind.2007), *cert. denied.* We review factual findings of a post-conviction court under a "clearly erroneous" standard but do not

defer to any legal conclusions. *Id.* We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. *Id.*

A criminal defendant's right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. *Castel v. State,* 876 N.E.2d 768, 770 (Ind.Ct.App.2007). This right can only be relinquished by a knowing, voluntary, and intelligent waiver. *Id.* at 771. We review de novo a conclusion that a defendant knowingly, intelligently, and voluntarily waived the right to counsel. *Drake v. State,* 895 N.E.2d 389, 393 (Ind.Ct.App.2008).

When a defendant informs a trial court that he or she wishes to proceed without counsel, "[t]he trial court must establish a record showing that the defendant was aware of the nature, extent, and importance of the right and the consequences of waiving it. Merely informing the defendant of his constitutional rights is insufficient." *Sedberry v. State,* 610 N.E.2d 284, 286 (Ind.Ct.App.1993), *trans. denied.* Generally, in order for a defendant's waiver of counsel to be knowing and intelligent, a trial court should advise a defendant "of the potential pitfalls surrounding self-representation so that it is clear that 'he knows what he is doing and [that] his choice is made with eyes open.'" *Kubsch v. State,* 866 N.E.2d 726, 736 (Ind. 2007) (quoting *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45

L.Ed.2d 562 (1975)), *cert. denied.* There are no "magic words" a trial court must utter to ensure a defendant adequately understands the gravity of the situation.[1] *Id.* Rather, appellate courts generally consider four factors when reviewing the adequacy of a waiver of counsel: " '(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.' "[2] *Poynter v. State,* 749 N.E.2d 1122, 1127–28 (Ind.2001) (quoting *United States v. Hoskins,* 243 F.3d 407, 410 (7th Cir.2001)). The law indulges every reasonable presumption against a waiver of the fundamental right to counsel. *Id.* at 1126.

Here, there clearly was no conversation or advisement by the trial court to Hopper regarding the "dangers and disadvantages" of self-representation. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. In fact there was no meaningful inquiry by the trial court at all with respect to whether Hopper waived his right to counsel knowingly and intelligently. Nonetheless, the State urges that we adhere to *Sedberry* and cases that have followed it. In *Sedberry,* a panel of this court held that where a defendant waives his or her right to counsel and pleads guilty, there is no need to advise a defendant about the perils of proceeding pro se because the defendant will not be attempting to conduct a trial. *Sedberry,* 610 N.E.2d at 287. *See also Redington v. State,* 678 N.E.2d 114, 118

---

**1.** This court listed some guidelines trial courts may use in *Dowell v. State,* 557 N.E.2d 1063, 1066–67 (Ind.Ct.App.1990), *trans. denied, cert. denied.* These guidelines are not mandatory, however. *Leonard v. State,* 579 N.E.2d 1294, 1296 (Ind.1991).

**2.** The fourth factor concerns whether a defendant's decision to waive counsel appears tactical or strategic in nature or manipulative and intending delay. *Poynter,* 749 N.E.2d at 1128 n. 6.

(Ind.Ct.App.1997), *trans. denied; Greer v. State,* 690 N.E.2d 1214, 1217 (Ind.Ct.App. 1998), *trans. denied.*

Hopper contends that *Sedberry* and its progeny were decided incorrectly, and that his waiver of counsel was not knowing and intelligent. After careful consideration, we decline to follow *Sedberry, Redington,* and *Greer* to the extent they seem to establish two different standards for reviewing a waiver of counsel: one for defendants who choose to go to trial and a different, less demanding standard for defendants who choose to plead guilty. Judge Miller dissented in *Sedberry,* first noting the general proposition that a defendant is entitled to counsel at all critical stages of a criminal prosecution. *Sedberry,* 610 N.E.2d at 287 (Miller, J., dissenting). *See also Mosley v. State,* 908 N.E.2d 599, 604 (Ind.2009). Judge Miller then stated, "It seems to me that there can be no more critical stage of a criminal proceeding than the decision to plead guilty and waive one's right to a trial by the court or a jury." *Sedberry,* 610 N.E.2d at 287–88. We agree with this sentiment.

Many courts have observed that pretrial plea bargaining is a critical stage of criminal prosecutions for purposes of the right to counsel. *See, e.g., United States v. Leonti,* 326 F.3d 1111, 1117 (9th Cir.2003); *Williams v. Jones,* 571 F.3d 1086, 1090 (10th Cir.2009); *State v. Bristol,* 159 Vt. 334, 618 A.2d 1290, 1292 (1992). In fact, it is in pretrial proceedings that the vast majority of criminal cases are resolved. The Supreme Court of Kentucky has noted:

It is indeed rare for any criminal prosecution not to involve some sort of plea-bargaining along the way. Arguably, when this happens it can be the most critical stage of the proceeding.... [I]t is in the negotiation of a criminal case where the learning and experience of legal counsel can prove most vital. The overwhelming majority of criminal cases are pled out. Our criminal justice system has arrived at a place where often the negotiating skills of a lawyer are more critical than his or her prowess in a courtroom.

*Stone v. Commonwealth,* 217 S.W.3d 233, 239 (Ky.2007). It also is axiomatic that, aside from plea bargaining, a hearing at which a defendant chooses to plead guilty is a critical stage of the proceeding. *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963). We posit that the direction *Sedberry* takes us diminishes plea negotiations and guilty plea hearings in importance. We believe both are, indeed, critical stages of the proceeding where representation by a lawyer is crucial.

We find it instructive that in *Redington,* a panel of this court that decided to follow *Sedberry* included in its opinion the following quote from Justice Sutherland on the importance of trained counsel:

Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Redington,* 678 N.E.2d at 118 (quoting *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)).

■■ We believe these observations lend forceful support to the proposition that the advice and assistance of counsel can be just as important before trial as it is during trial. That is, counsel is better able than a layperson to assess the strength of the State's evidence and provide advice on the likelihood of succeeding at trial. Counsel likewise may determine there are grounds to attack the admissibility of evidence, even before trial, or even seek dismissal of a case altogether. Counsel also should be better equipped to plea bargain with a prosecutor than a layperson. In sum, as Justice Sutherland stated, the assistance of counsel can be vital *"at every step in the proceedings ...." Id.* (emphasis added). As such, we conclude the requirement that a defendant be advised of the dangers of self-representation and the benefit of counsel applies with equal strength regardless of whether a pro se defendant is choosing to plead guilty or to proceed to trial. *See Stone,* 217 S.W.3d at 239 ("The decision to accept or reject a plea offer necessarily involves an analysis of the charges, the nature and admissibility of the [government's] evidence, and an accurate assessment of the defendant's actual guilt. '[A]n intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney.' ") (quoting *Brady v. United States,* 397 U.S. 742, 748 n. 6, 90 S.Ct. 1463, 1469 n. 6, 25 L.Ed.2d 747 (1970)).

Finally, we note that a panel of this court in *Eaton v. State,* 894 N.E.2d 213 (Ind.Ct.App.2008), *trans. denied,* issued an opinion implicitly disagreeing with *Greer,* which had applied *Redington* in the con-

text of probation revocation.[3] The *Eaton* panel noted that the right to counsel is " 'no ordinary right but rather ... a constitutional right of fundamental importance[.]' " *Eaton,* 894 N.E.2d at 217 (quoting *Fitzgerald v. State,* 254 Ind. 39, 46–47, 257 N.E.2d 305, 311 (1970)). The panel further stated that the right to counsel "will often be the vehicle by which all the other rights are protected. In other words, a layperson is likely unaware of the existence of his other rights without advice of counsel." *Id.* at 218. Based on these observations, the panel held that, where a pro se defendant admitted to probation violations without having ever been advised of the consequences of proceeding pro se and without the trial court having determined the defendant's competency, his waiver of counsel was not knowing and intelligent. *Id.* We agree with the *Eaton* panel's observations, and believe they apply with even more force in the context of a criminal conviction as opposed to a probation revocation.

■■ Here, Hopper never was advised of the disadvantages of self-representation, either at his initial hearing or at his change of plea hearing. Indeed, he was wholly misadvised at the initial hearing regarding his right to counsel. Specifically, the "Your Rights in Court" form Hopper read and signed indicates that an indigent person would be appointed counsel by the trial court only if "the case is serious enough...." App. pp. 46, 47. This clearly is a misrepresentation of the scope of the right to counsel. It has been clear since 1951 for the Indiana Constitution and since 1972 for the United States Constitution that the right to counsel applies in both misdemeanor and felony proceedings. *See Castel,* 876 N.E.2d at 771 n. 2 (citing

---

**3.** The *Eaton* opinion asserted that *Greer* was distinguishable, but never explained *how* it

was distinguishable. *See Eaton,* 894 N.E.2d at 216.

*Bolkovac v. State,* 229 Ind. 294, 98 N.E.2d 250 (1951), and *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)). The right to counsel in a criminal case is not dependent upon the "seriousness" of the case. If this form is still in use, we direct that the references to the "seriousness" of the case be deleted from the form's discussion of the right to counsel.

The misadvice on the form aside, the form does not advise defendants on the perils of self-representation, and there is no indication the trial court gave such advice orally at the initial hearing or the change of plea hearing.[4] The trial court never conducted any detailed inquiry into Hopper's decision to proceed pro se. There is no evidence in the record demonstrating that Hopper independently understood the dangers and disadvantages of self-representation. Hopper's background was that he did not graduate from high school, and had one prior contact with the criminal justice system five years earlier when he also appeared pro se, and which apparently resulted in an unspecified conviction of some kind. There is absolutely no indication in the record that Hopper's decision to proceed pro se was done for manipulative purposes. Balancing the four factors from *Poynter,* we conclude Hopper has met his post-conviction burden of establishing that his waiver of counsel was not knowing and intelligent. *See Poynter,* 749 N.E.2d at 1128 (concluding waiver of counsel was not knowing and intelligent where trial court never advised defendant on the disadvantages of self-representation, there was nothing in the record indicating whether defendant may have independently understood such disadvantages, the defendant had a ninth-grade education and some previous contact with the criminal justice system involving unspecified misdemeanors, and there was no indication decision to waive counsel was done with intent to manipulate the process).

Having concluded that Hopper's waiver of counsel was not knowingly or intelligently made, there is no need for us to inquire as to whether he was prejudiced by the absence of counsel prior to his pleading guilty. This is consistent with Supreme Court precedent, which holds that a defendant need not make any showing of prejudice if he or she was improperly denied the assistance of counsel during any critical stage of the proceedings. *See United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984). *See also Drake,* 895 N.E.2d at 396 ("whether a defendant voluntarily, knowingly, and intelligently waived counsel is not subject to a harmless error analysis"); *Stone,* 217 S.W.3d at 238 ("The denial of counsel at a critical stage is not subject to harmless error analysis once a lawyer-less stage has been deemed as critical."). Because Hopper did not knowingly or intelligently waive his right to counsel either before plea bargaining or before the guilty plea hearing itself, he need not make any attempt to demonstrate prejudice.[5]

**Conclusion**

Hopper has established that his waiver of counsel before pleading guilty in 2005 to

---

4. A revised form accurately stating the scope of the right to counsel also could include advisements to a defendant regarding the disadvantages of self-representation and advantages of obtaining counsel, so as to comply with *Faretta* in a manner that should not be overly burdensome to trial courts.

5. The State implies that Hopper's plea bargain was a good one for him. Clearly, this goes to prejudice, which Hopper is not required to demonstrate.

Class A misdemeanor OWI was not knowingly or intelligently made. The post-conviction court erred in concluding otherwise, although we acknowledge that it did so in reliance upon *Redington,* with which we now disagree. We reverse the denial of post-conviction relief and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and MAY, J., concur.