ATTORNEYS FOR APPELLANT
Bart M. Betteau
New Albany, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

**In the**

## Indiana Supreme Court

FILED
Sep 28 2010, 3:49 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 13S01-1007-PC-399

DAVID HOPPER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court No. 13C01-0910-PC-002
The Honorable K. Lynn Lopp, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 13A01-1002-PC-41

**September 28, 2010**

**Boehm, Justice.**

David Hopper entered a plea of guilty in 2005 to a charge of Operating While Intoxicated, a Class A Misdemeanor. At the plea hearing, the trial court advised Hopper that he had a right to an attorney and if he could not afford an attorney one would be appointed for him. Hopper confirmed, as recited in a written "Waiver of Attorney" form he had signed at the initial hearing, that he wished to proceed without an attorney. Hopper then admitted to the factual basis of the charge and the trial court accepted the plea.

In 2009, Hopper filed a petition for post-conviction relief, alleging that his waiver of counsel was not knowing and intelligent, and he was therefore denied his right to counsel in

1

violation of both the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution.  The basis of Hopper's claim was that he was not advised of his right to counsel incident to the plea negotiations that followed his initial hearing.  The post-conviction court denied relief, but the Court of Appeals reversed, pointing out that Hopper was never advised of the dangers of self-representation, and that plea negotiations and plea hearing are critical stages of the proceeding to which the right of counsel attaches.  Hopper v. State, 925 N.E.2d 499, 504–06 (Ind. Ct. App. 2010).  The Court of Appeals expressly rejected the holdings of a line of cases stemming from the majority opinion in Sedberry v. State, 610 N.E.2d 284 (Ind. Ct. App. 1993), trans. denied.  Other panels of the Court of Appeals had also found no need to advise a defendant who pleads guilty of the perils of self-representation because a plea would not result in a trial at which the lawyer's knowledge of rules of evidence, tactics of cross-examination, etc., would be required.  E.g., Redington v. State, 678 N.E.2d 114, 118 (Ind. Ct. App. 1997), trans. denied; Greer v. State, 690 N.E.2d 1214, 1217 (Ind. Ct. App. 1998), trans. denied.  The Court of Appeals in Hopper's case agreed with Judge Miller, who argued in dissent in Sedberry that there is no more critical stage of a criminal proceeding than the decision to plead guilty.  Hopper, 925 N.E.2d at 503.  Moreover, the Court of Appeals noted that the plea hearing has been identified as a critical stage as early as White v. Maryland, 373 U.S. 59 (1963).  Id.

Advice as to the dangers of self-representation at trial is required before a defendant may make a knowing and intelligent decision to proceed pro se.  Faretta v. California, 422 U.S. 806, 835 (1975).  For the most part, the problems inherent in self-representation have focused on the defendant's unfamiliarity with the rules of evidence, inexperience in handling witnesses, and other issues arising from lack of trial skills.  But there is no requirement to give detailed warnings of the danger of self-representation at all stages of a criminal proceeding.  As Patterson v. Illinois, 487 U.S. 285 (1988) made clear, Miranda warnings were sufficient information to comply with the Sixth Amendment and permit police questioning of the defendant after indictment.  A guilty plea hearing falls between these two poles.  In finding a need to advise Hopper of the desirability of an attorney before pleading guilty, the Court of Appeals pointed to somewhat different considerations, noting that an attorney's value to a person accused of a crime is not limited to courtroom skills.  Hopper, 925 N.E.2d at 503–04.  Specifically, a defendant's plea negotiation can benefit from an attorney's experience in bargaining for a reduced sentence or fewer counts, skill in evaluating potential defenses, or ability to point out evidentiary or

2

procedural problems for the prosecution.  Id.  The Court of Appeals concluded that a waiver of counsel entered without advice of both the right to counsel and the dangers of proceeding without an attorney is not knowing and voluntary, and a conviction based on a guilty plea therefore violated Hopper's right to counsel.  Id. at 505.

The briefing and the opinion of the Court of Appeals in this case did not discuss Iowa v. Tovar, 541 U.S. 77, 81 (2004), which unanimously ruled that the Iowa Supreme Court had erred in concluding that the Sixth Amendment right to counsel included the right to be advised at a plea hearing that waiving the right to counsel entails "the risk that a viable defense will be overlooked" and that waiver of his right to counsel would forego "the opportunity to obtain an independent opinion on whether, under the facts and applicable law, it is wise to plead guilty." The Supreme Court made clear that the information a defendant must possess in order to make an intelligent election to proceed without counsel depends on "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."  Id. at 88.  The Court focused on the specific language required by the Iowa Supreme Court and noted that the advisements at issue in Tovar could be taken as implying that the defendant had a viable defense, or that a plea to a lesser charge was available when it was not.  Tovar, like Hopper, was charged with operating a vehicle while intoxicated.  The Court found this "straightforward" case to be a factor in concluding that the Sixth Amendment did not require the requested advisement.  The Court also noted that Tovar made no claim that any specific information was lacking, and therefore failed to carry his burden in post-conviction relief to establish that his waiver of counsel was not intelligently made.  The Court made clear that the Sixth Amendment does not require the Iowa advisements in all cases, but also made explicit that States are free to adopt "by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful."  Id. at 94.

The Court of Appeals found somewhat different advisements from those involved in Tovar to be necessary.  Rather than focusing on the attorney's ability to identify potential defenses, the Court of Appeals pointed to the value of counsel's experience in bargaining for a plea and ability to identify chinks in the State's armor to fortify a negotiating position.  Hopper, 925 N.E.2d at 503–04.  The Court of Appeals referred to both the Sixth Amendment and Article I, Section 13 of the Indiana Constitution, and did not differentiate between the two in this respect.  We agree with the result reached by the Court of Appeals, but do not rest our holding on

either the federal or state constitution.  Rather, we exercise our supervisory power to require that in the future a defendant expressing a desire to proceed without counsel is to be advised of the dangers of going to trial as required by Faretta, and also be informed that an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case.  Such an advisement will require minimal additional time or effort at the initial hearing, and may encourage defendants to accept counsel.  The effect of this advice will undoubtedly vary from case to case, but we do not believe it will impose significant burdens on the judicial process.  To the extent this additional information causes fewer defendants to proceed pro se, participation of counsel in this process may encourage plea bargains as frequently as it causes delay.

Because we announce a new requirement as an exercise of supervisory powers, we apply it prospectively to hearings in which a defendant expresses a desire to proceed pro se, and affirm the judgment of the trial court.

Sullivan, and Rucker, JJ., concur.
Shepard, C.J., dissents with separate opinion in which Dickson, J., joins.

**SHEPARD, Chief Justice, dissenting**.

As counsel was professional enough to acknowledge at oral argument, the primary beneficiaries of today's decision will be repeat offenders, people whose multiple arrests and prosecutions do not deter them from engaging in behavior that endangers their fellow citizens. Indeed, appellant David Hopper is here precisely because he has been charged with yet another offense and it would be helpful to him if he could wipe out his last conviction for drunk driving.

The U.S. Supreme Court has told us that the warnings mandated today are not required by the federal Constitution, and the majority explicitly declines to say that they are required by the Indiana Constitution.

Rather, the majority says the Court is acting in its supervisory capacity, a legitimate grounds of authority. But it acts without a word about the balancing of social costs or benefits imbedded in the new mandate.

How many innocent people are now pleading guilty without a lawyer because the judge did not tell them they could consult a lawyer? How many guilty people will decide not to plead guilty as the result of the "minimal" judicial intervention the majority says it contemplates? If indeed the advisement is likely to be minimal, does it tell offenders anything they didn't learn from television? How many repeat offenders will avoid the penalties they have otherwise earned because the warning was omitted or was found inadequate with the benefit of hindsight? How many victims will these repeat offenders create?

That society, or even offenders, will be better off is far from clear.

Dickson, J., joins.