Vincent M. BUTLER Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A01–1008–CR–414.

Court of Appeals of Indiana.

June 27, 2011.

Mark Everett Watson, Terre Haute, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Vincent M. Butler Jr. appeals the trial court's revocation of his probation. Butler contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel and that the trial court abused its discretion by imposing the balance of his four-year previously-suspended sentence. Because Butler admitted that he violated his probation, the trial court was not required to warn him of the dangers of self-representation in order to establish a knowing, intelligent, and voluntary waiver of his right to counsel. The record shows that the trial court adequately advised Butler of his right to counsel and that he knowingly, intelligently, and voluntarily waived that right. We also conclude that the trial court did not abuse its discretion by imposing the balance of his four-year previously-suspended sentence. We therefore affirm the trial court.

### Facts and Procedural History

In April 2010, Butler pled guilty to five counts of Class D felony theft. The trial court sentenced him to one year executed and four years suspended to probation, with one year of the probationary period to be served on in-home detention. Because Butler had earned enough credit time while awaiting disposition of the matter that the executed portion of the sentence had been served, he was immediately placed on probation.

In July 2010, the State filed a petition to revoke direct placement in the home detention program and/or to revoke probation, and the probation office filed a notice of probation violation. The notice of probation violation alleged that Butler: (1) was behind in his home detention fees in the amount of $398 as of July 26, (2) tested positive for cocaine and marijuana on July 4, (3) took a portable breath test on July 23 indicating he had a blood alcohol content of 0.089 and retested twenty minutes later with a blood alcohol content of 0.101, (4) had a phone incompatible with the monitoring system because it was cable, and (5) tested positive for marijuana on May 20 and marijuana and alcohol on July 20.

Butler appeared pro se at his probation revocation hearing. The trial court informed him of the allegations and the range of penalties he faced if he admitted or if the court found that he violated his probation. The following colloquy then occurred:

COURT: You have a right to have a lawyer represent you in this proceeding. If you'd like to have one, can't afford one,

one will be appointed for you. Mr. Butler, do you wish to have a lawyer represent you?

[BUTLER]: No.

COURT: You're gonna proceed today without a lawyer?

[BUTLER]: Yes.

COURT: Okay. And you understand you have a right to a lawyer?

[BUTLER]: Yes.

COURT: Mr. Butler then, do you admit or deny that you violated the terms of your probation?

[BUTLER]: Yes.

COURT: Okay, does that mean you admit—I need, I need to either hear that you admit it or you deny it.

[BUTLER]: I admit.

Tr. 7–28 p. 7.[1] Butler tried to explain his behavior by saying that the drug screens were not thirty days apart, someone gave him cocaine but he handed it right back, he was behind on his home detention fees because someone stole his money, he was told he could do daily reporting when issues arose with his phone, and he was given only one breath test. The court found that Butler waived his right to counsel, found that Butler admitted violating his probation, and set the matter for a dispositional hearing.

At the dispositional hearing, Butler's probation officer highlighted that Butler's positive drug screens for cocaine and marijuana and his breath test of 0.101 were within the short three months or so that he had been on probation. She recommended that the court impose the balance of his four-year suspended sentence in the Department of Correction. Butler admitted he is addicted to marijuana, promised he would not have another dirty screen, explained the circumstances surrounding the other probation violations, said he could pay a lump sum of two to three hundred dollars toward his home detention fees, and said he had a job. The court set the matter for another hearing to hear from Butler's case manager at Vigo County Community Corrections.

At the hearing, Butler's probation officer and case manager testified for the State. Butler, still pro se, cross-examined both witnesses. He also presented two witnesses, his girlfriend and his brother. The trial court revoked Butler's probation, ordered him to serve the balance of his previously-suspended four-year sentence in the Department of Correction, and recommended that he receive substance abuse treatment while incarcerated:

You had previously admitted to the probation violation Mr. Butler, and this matter was set for a dispositional hearing. Having heard the evidence, you've had four (4) separate felony cases in the last four (4) years in this Court; you've been to the D.O.C.; you've been on probation and you didn't successfully complete it before. You have a drug problem, you know that, you've admitted it. The Court knows it. It's obvious, but you know, until you decide you want to help yourself, there's nothing the Court can do. I mean, probation's an opportunity to keep out of the D.O.C. You didn't make it thirty (30) days, and you've already tested twice for marijuana, once for cocaine, you've consumed alcohol. I

---

1. Butler's probation revocation proceeding was held over a period of three days: July 28, July 29, and August 3, 2010. Because the transcript for each hearing is separately bound and paginated, we refer to the transcripts as "Tr. 7–28," "Tr. 7–29," and "Tr. 8–3." We note that our appellate rules require transcripts to be consecutively paginated. *See* Ind. Appellate Rule 28(A)(2) ("The pages of the Transcript shall be numbered consecutively regardless of the number of volumes the Transcript requires.").

mean, there's no, you know. What I'm gonna do is to impose the balance, find you've violated your probation, impose the four (4) years, recommend alcohol and drug treatment at the D.O.C. and hopefully that, you know, hopefully that you decide that's what you want.

Tr. 8–3 p. 36–37.

Butler now appeals.

### Discussion and Decision

Butler contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel and that the trial court abused its discretion by imposing the balance of his four-year previously-suspended sentence.

### I. Waiver of Right to Counsel

Butler first contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel.

■ Probation is a favor granted by the State, not a right to which a defendant is entitled. *Cooper v. State*, 900 N.E.2d 64, 66 (Ind.Ct.App.2009). A probationer faced with a petition to revoke his probation is not entitled to the full panoply of rights he enjoyed before the conviction. *Id.* For instance, the rules of evidence do not apply in a revocation proceeding, and the State need prove an alleged violation of probation by only a preponderance of the evidence. *Id.*

■ A defendant is entitled to certain due process protections before the revocation of his probation. *Id.* One of these protections is the right to counsel. *Id.; see also* Ind.Code § 35–38–2–3(e) ("The person [in a revocation proceeding] is entitled to confrontation, cross-examination, and representation by counsel."). When a defendant proceeds without the benefit of counsel, the record must reflect that he knowingly, intelligently, and voluntarily waived his right to counsel. *Cooper v. State*, 900 N.E.2d at 66. That is, the trial court must determine the defendant's competency to represent himself and establish a record of the waiver. *Id.* "There are no magic words a judge must utter to ensure a defendant adequately appreciates the nature of the situation." *Kubsch v. State*, 866 N.E.2d 726, 736 (Ind.2007), *reh'g denied.* "Rather, determining if a defendant's waiver was knowing and intelligent depends on the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.* (quotations omitted).

■ Moreover, when a probationer proceeds pro se and chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation. *Greer v. State*, 690 N.E.2d 1214, 1217 (Ind.Ct.App.1998), *trans. denied, abrogated by Hopper v. State*, 934 N.E.2d 1086 (Ind.2010), *reh'g granted.*[2]

2. We acknowledge that our future reliance on *Greer* is drawn into question by our Supreme Court's September 28, 2010, decision in *Hopper.* In that case, the Court exercised its supervisory power

> to require that in the future a defendant expressing a desire to proceed without counsel is to be advised of the dangers of going to trial as required by *Faretta [v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)], and also be informed that an attorney is usually more experi-

enced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution's case.

934 N.E.2d at 1088. The Court specifically stated that the *Hopper* advisement is to be applied prospectively. *Id.* at 1089. Because Butler's revocation hearings were held two months before our Supreme Court's decision in *Hopper*, its apparent abrogation of *Greer* is inapplicable to the facts before us. In any event, the Court recently granted the State's

■ We review de novo a trial court's finding that a defendant waived his right to counsel. *Cooper*, 900 N.E.2d at 67.

We find the facts of this case similar to *Greer*. There, the trial court advised Greer that he had the right to an attorney and that one would be appointed if he wanted an attorney but could not afford one. 690 N.E.2d at 1215. When the court asked Greer if he was making arrangements for an attorney, Greer responded that he was not and that he planned to admit the probation violation allegation. *Id.* The court then said, "Okay. And Mr. Greer, let me be sure that you understand that you have a right to have an attorney and that one can be appointed for you at no cost to you if you wish, do you understand that?" *Id.* Greer responded affirmatively. *Id.* The trial court proceeded to advise Greer of the rights he would be waiving if he admitted the allegations, his right to appeal if the court decided to revoke his probation, and the sanctions the court could impose if the court found that he had violated his probation. *Id.* The court asked Greer if he understood his rights, to which Greer said yes. *Id.* The court then asked Greer if he still wanted to admit that he violated his probation, to which Greer also said yes. *Id.* The court ultimately made a finding that Greer admitted violating his probation. *Id.*

On appeal, Greer contended that the trial court did not properly determine that he knowingly, intelligently, and voluntarily waived his right to counsel because the court did not inquire into his educational background and familiarity with legal procedures and failed to inform him of the pitfalls of self-representation. *Id.* at 1215–16. This Court concluded that the trial court was not required to inquire into Greer's educational background and familiarity with legal procedures if the record

nevertheless reflected that his waiver of counsel was knowingly, intelligently, and voluntarily made. *Id.* at 1216. This Court also concluded that when a pro se probationer in a revocation proceeding chooses to admit his alleged probation violation, the trial court is not required to warn him of the dangers of self-representation because he will not be going to trial:

> [A] probationer who chooses to admit his probation violation . . . [is not] in danger of "conviction" at the hands of the State. It is unnecessary to warn such a person of the pitfalls of self-representation, for those pitfalls exist only when he is confronted with prosecutorial activity which is designed to establish his culpability. It is therefore clear that, when a probationer who proceeds *pro se* chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation.

*Id.* at 1217. Because Greer informed the trial court that he would admit the allegation, the trial court was not required to warn him of the dangers of self-representation. *Id.* at 1217, 1219. Finding that the record indicated that Greer was adequately advised of his rights and that he understood those rights, this Court concluded that Greer knowingly, intelligently, and voluntarily waived his right to counsel. *Id.* at 1217.

■ In line with *Greer*, because Butler admitted that he violated his probation, the trial court was not required to warn him of the dangers of self-representation in order to establish a knowing, intelligent, and voluntary waiver of his right to counsel.

petition for rehearing in *Hopper* but has not yet issued an opinion.

Butler nonetheless attempts to distinguish *Greer* and argues that the trial court here should have warned him of the dangers of self-representation. He states that Greer "received an explicit advisement of his right to counsel," the court then "listed the remaining rights and explained the possible outcomes of the case," and Greer acknowledged his rights and still affirmed that he would admit the allegations. Appellant's Br. p. 9–10. In contrast, Butler argues, "the trial court asked Butler if he understood that he had the right to counsel and if he desired to have counsel appointed. Butler acknowledged this right in a conclusory fashion and declined the appointment of counsel." *Id.* at 10. Butler continues, "The trial court did not make a repeated inquiry and ask Butler if he was sure he wanted to proceed *pro se* in advising him of his right to counsel...." *Id.*

We find Butler's argument unavailing. We fail to see any difference between the "explicit advisement" of the right to counsel in *Greer* and the advisement given in this case. To the extent that Butler argues that the court's advisement was too perfunctory because the court did not repeatedly advise him of his right to counsel, we disagree that a court must make repeated advisements. Here, the trial court told Butler that he had a right to an attorney and that if he wanted an attorney but could not afford one, an attorney would be appointed for him. The court then asked Butler whether he wanted an attorney. Butler said no. The court verified with Butler that he was going to proceed at the hearing without an attorney and then said, "And you understand you have a right to a lawyer?" Tr. 7–28 p. 7. Butler said yes. The record shows that the trial court advised Butler of his right to counsel and that Butler unequivocally waived that right.

Furthermore, and important to our resolution of this issue, the record indicates that Butler has extensive experience with the criminal justice system in Vigo County. He has numerous misdemeanor and felony convictions spanning over twenty years, including felony convictions for dealing in cocaine, battery, domestic battery, theft, and failure to return to lawful detention. He has been placed on probation and has had his probation revoked multiple times. This information, coupled with the fact that Butler did ask for and receive appellate counsel, Tr. 8–3 p. 37–38, shows that he knew how to exercise his right to an attorney when he so desired. *See Cooper,* 900 N.E.2d at 70 (defendant's prior run-ins with the legal system, his explanation to court that he had requested public defender for other charges, and his request for appellate counsel shows he knew how to exercise his right to attorney).

Finally, we briefly address Butler's other arguments regarding his waiver of the right to counsel. First, Butler argues that he could have been under the influence of drugs or alcohol at the time of the hearing. He surmises that his failed drug screen on July 4, 2010, or his failed breath test on July 23, 2010, may have affected his decision to waive his right to counsel on July 28, 2010. We note his admission to violating the terms of his probation by consuming alcohol and drugs but decline to speculate that those substances affected his decision to waive his right to counsel. Second, Butler argues that he was not advised "of his other rights as outlined in *Cooper.*" Appellant's Br. p. 10. To the extent he is arguing that the court should have advised him of other rights, such as the right to confront and cross-examine witnesses, before a waiver of the right to counsel is valid, he fails to direct us to any authority for such proposition. Third, Butler argues that the court "did not stress to Butler emphatically and consis-

tently that his liberty interest was at stake and that he could be sent back to prison." *Id.* To the extent such information would have affected Butler's waiver of the right to counsel, the record shows that the court told Butler that if it found that he violated his probation, "[t]he minimum is zero (0) additional days in jail" and "the maximum penalty the Court can impose is the four (4) years that was suspended." Tr. 7–28 p. 6.

We conclude that Butler was adequately advised of his right to counsel and that the record shows that he knowingly, intelligently, and voluntarily waived that right.

## II. Sentence

■ Butler also contends that the trial court abused its discretion by imposing the balance of his four-year previously-suspended sentence because the court failed to consider his history of drug addiction.

■ Probation revocation is a two-step process. *Cox v. State*, 850 N.E.2d 485, 488 (Ind.Ct.App.2006). First, the court must make a factual determination that a violation of a condition of probation has occurred. *Id.* If a violation is proven, the trial court must determine if the violation warrants revocation of the probation. *Id.* When a probationer admits to the violation, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. *Id.* At this step, the probationer must be given an opportunity to present evidence that explains and mitigates his violation. *Id.*

■ Upon the revocation of probation, a trial court may impose one or more of the following sanctions:

(1) Continue the person on probation, with or without modifying or enlarging the conditions.

(2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

(3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind.Code § 35–38–2–3(g). We review a trial court's sentencing decisions for probation violations for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

Butler argues that the trial court failed to consider his long history of drug addiction, "the treatment he received or should have received, or the effects his addiction had on his ability to comply with the terms of probation." Appellant's Br. p. 13–14. We disagree. The trial court's oral statement when revoking his probation establishes that the court considered his drug addiction but concluded that Butler had to make the first step. *See* Tr. 8–3 p. 36 ("You have a drug problem, you know that, you've admitted it. The Court knows it. It's obvious, but you know, until you decide you want to help yourself, there's nothing the Court can do."). The trial court's recommendation that Butler receive substance abuse treatment while incarcerated further shows that the court considered his drug addiction when crafting his sentence.

To the extent Butler argues that he needs rehabilitation and that rehabilitation cannot occur while he is incarcerated, this argument overlooks the fact that the Indiana prison system offers multiple programs, including drug and alcohol classes, designed to rehabilitate inmates.

Before sentencing Butler, the trial court noted his relatively recent spate of felony cases, that he has been incarcerated before, that he has been unsuccessful on probation in the past, that he has a drug problem, and that he tested positive for cocaine, marijuana, and alcohol in the

short time he was on probation in this case. We cannot say that the trial court abused its discretion by imposing the balance of Butler's four-year previously-suspended sentence.

Affirmed.

MATHIAS, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

My colleagues state that the facts of this case are similar to *Greer v. State,* 690 N.E.2d 1214 (Ind.Ct.App.1998), and conclude that Butler, like Greer, waived his right to counsel because he admitted violating his probation.

The following exchange between the trial court and Butler is the entirety of the record regarding the waiver of counsel:

COURT:  If it's found you've violated your probation, whether you admit or it's found at a hearing, the maximum penalty the Court can impose is the four (4) years that was suspended. The minimum is zero (0) additional days in jail. Do you understand what the potential penalties are Mr. Butler?

DEFENDANT BUTLER: Yes sir.

COURT:  You have a right to have a lawyer represent you in this proceeding. If you'd like to have one, can't afford one, one will be appointed for you. Mr. Butler, do you wish to have a lawyer represent you?

DEFENDANT BUTLER: No.

COURT:  You're gonna proceed today without a lawyer?

DEFENDANT BUTLER: Yes.

COURT:  Okay. And you understand you have a right to a lawyer?

DEFENDANT BUTLER: Yes.

COURT:  Mr. Butler then do you admit or deny that you violated the terms of your probation?

DEFENDANT BUTLER: Yes.

COURT:  Okay, does that mean you admit—I need, I need to either hear that you admit it or deny it.

DEFENDANT BUTLER: I admit it.

*Tr. 7–28* at 6–7.

I respectfully dissent for the following reasons:

First, as noted in the majority opinion, our Supreme Court abrogated *Greer* in *Hopper v. State,* 934 N.E.2d 1086 (Ind. 2010).

Second, in *Greer,* Greer voluntarily admitted that he planned on pleading guilty while the trial court was in the process of advising Greer of his right to counsel, as shown by the following exchange:

COURT:  [y]ou have a right to be represented by an attorney. And if you wish to have an attorney and can't afford one an attorney will be appointed to represent you. Let me ask Mr. Curtis Greer first, are you making an arrangement to get an attorney?

CURTIS GREER:  No, ma'am. I just plan on pleading—just plead guilty and . . .

*Greer,* 690 N.E.2d at 1215. Here, there was no such voluntary interjection. Rather, Butler's admission came about in direct response to questioning from the court. *Tr. 7–28* at 6–7. Thus, unlike the situation in *Greer* where the defendant himself injected the fact that he wished to plead guilty, the admission here came about in response to the court's direct questioning.

Third, " 'whenever a defendant proceeds without the benefit of counsel, the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived.' " *Cooper v. State*, 900 N.E.2d 64, 66 (Ind.Ct.App.2009). That is, in a probation revocation proceeding, the trial court must both determine the defendant's competency to represent himself. *Id.* Here, as shown by the above exchange, there was no determination of Butler's competency.

Fourth, to ensure that the defendant's waiver of counsel is made knowingly, intelligently, and voluntarily, the defendant must be made aware of the perils of self-representation. *Redington v. State*, 678 N.E.2d 114 (Ind.Ct.App.1997), *trans. denied*, where we observed:

> The record must demonstrate that [the criminal defendant] is fully aware of the nature, extent and importance of the right he has waived and the possible consequences thereof so "his choice is made with his eyes open." The consequence of proceeding pro se is the polestar of any admonishment or warning concerning waiving the right to counsel. There is no rigid mandate which sets forth specific inquiries or warnings which a trial court should make before determining that a waiver is voluntary and intelligent. Accordingly, [the law of Indiana generally requires] a warning to the effect that a defendant will be held to the "ground rules" of trial procedure, that the defendant will be treated like an attorney, responsible for making objections and following procedural and evidentiary rules, and that the defendant be made aware of the pitfalls of self-representation.

*Id.* at 117–18 (citations omitted).

We explained that "[t]he reasons for the above warnings are obvious":

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 118 (quoting *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). Again, an examination of the exchange set forth above fails to establish that Butler was so informed.

Fifth, although the trial court found that Butler admitted to probation violations, the record is unclear as to the extent of was such admission which, at best, was qualified and equivocal:

> DEFENDANT BUTLER: Your Honor, I—on the, on the drugs screens, they, they wasn't even thirty (30) days apart; and the cocaine, a person handed me the cocaine and I gave it back to the person, and the day that that happened, I, I had a drug screen and I told the, the field officer what happened. He said don't worry about it, and I took it as that. I haven't—and the only reason I was behind on my home detention, be-

cause someone stole my money, my money out of my room at the house, and I told my counselor that and she, and I told her that I was gonna pay, catch up this month, and she said it was okay.

. . . .

DEFENDANT BUTLER: They told me that they was, turn myself in, and I turned myself in. They told me that they was gonna treat this as daily reporting. My girlfriend's right here, and she heard them say it too. And on the breathalyser [sic], they only gave me one (1) breathalyser [sic] sir, and that was the zero point eight-nine (0.89) as you said. They did not test me twice for no breathalyser [sic]. And I, and this, that was it.

. . . .

DEFENDANT BUTLER: And over there at the, at work release, I was asking to speak to my counselor, because I wanted to know why, why are, why did you lie to me. You told me that turn, turn this box in; we was gonna do this as daily reporting, and she never did come until Monday. They wouldn't even call her or let me talk to her or

anything. That was my understanding of the reason to come to there. But I still turned myself in.

*Tr. 7–28* at 7–10.

Sixth and finally, my colleagues note that Butler's criminal history reveals a familiarity with the criminal justice system supporting the conclusion that his waiver of counsel was knowing, intelligent, and voluntary. The trial court made no mention of Butler's criminal history during the hearing at which it determined that Butler had waived his right to counsel and had admitted his probation violation. Further, there is no evidence in the record before us that either career criminals generally or Butler specifically possess a specialized legal knowledge or intelligence rendering them capable of making a knowing, intelligent and voluntary waiver of their rights in the absence of a full and adequate disclosure of the nature, extent and importance of such rights and the consequences of waiving them. Indeed, the conclusion could be easily drawn that an extensive criminal history is more likely reflective of the lack of critical thinking skills, not their presence.