RUCKER, J.,
dissenting.
Because I believe our original opinion in this case is sound, I disagree with the majority’s decision to grant the State’s petition for rehearing.
At the outset I observe that although declaring a rehearing petition “must ... go beyond a mere assertion that the original ruling was erroneous,” Op. at 616 (citing Griffin v. State, 763 N.E.2d 450-51 (Ind.2002)), the majority nonetheless entertains and effectively grants the State’s petition even though the State’s claim is that this Court’s original opinion was wrongly decided. In fact the State initially sought transfer from a divided opinion of the Court of Appeals which held that Hopper was entitled to an advisement on the desirability of consulting an attorney before pleading guilty. See Hopper v. State, 925 N.E.2d 499 (Ind.Ct.App.2010). In seeking transfer the State complained about the perils and pitfalls inherent with such an advisement. We granted transfer. And although granting Hopper himself no relief — a matter I touch upon below — we agreed with the Court of Appeals’ general proposition. The State now seeks rehearing making essentially the same arguments it made before. Nothing has changed. Under these circumstances alone, this Court should deny the petition for rehearing.
The majority spills much ink to conclude that “the post-conviction court was right that Hopper’s waiver of counsel was voluntary and intelligent.” Op. at 621. But in doing so it refutes a proposition that our original opinion did not assert. In a collateral attack the petitioner has the burden of proving that he did not knowingly and intentionally waive his right to the assistance of counsel. See Hall v. State, 849 N.E.2d 466, 472 (Ind.2006). And largely for the reasons the majority sets forth it is unlikely that the advisement we announced in our original opinion would have enlightened Hopper’s decision whether to seek counsel or represent himself. Indeed although the majority glosses over the fact, we affirmed Hopper’s conviction and thus he was granted no relief despite our announcing an advisement that now bears his name.
Further, the majority laments “our original opinion passed over a crucial question ...: is the absence of the instruction simply an additional factor to consider, or is the absence of the instruction a per se violation of one’s right to counsel?” Op. at 622. But rather than address this perceived inadequacy and clarify that the advisement is best understood as an additional factor to be considered, the majority creates a straw man characterizing the advisement as a “per se” rule and a “rigid mandate,” id., and then knocks it down by explaining why such rules and mandates have not worked in the past.
I am hard pressed to understand why the majority apparently thinks it is a bad thing or otherwise inappropriate simply to provide pro se — and likely indigent — defendants with such a modest advisement as: “an attorney is usually more experienced in plea negotiations and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecution’s case.” Hopper, 934 N.E.2d at 1088. Indeed except for its straw man argument the majority does not even attempt to refute our observations that “[sjuch an advisement will require minimal additional time or effort” and “we do not believe it will impose significant burdens on the judicial process.” Id. As one commentator has observed, “Substantive criminal law contains many *625 complexities — intent standards, jurisdictional provisions, defenses, and so forth. The defendant may be ‘guilty’ in a layman’s sense, and so be willing to confess, and yet may have a viable defense that he ought to invoke, or may be pleading guilty to the wrong grade of crime.” William J. Stuntz, Waiving Rights in Criminal Procedure, 75 Va. L.Rev. 761, 830 (1989).
The value of a Hopper advisement goes well beyond the direct benefits related to the charged crime and protecting a defendant’s constitutional rights. Uncounseled pro se defendants may very well plead guilty even to certain misdemeanor offenses that carry devastating collateral consequences ranging from deportation, to eviction from public housing, to barriers in employment.[1] These are the very types of considerations that could have a significant bearing on whether a pro se defendant is wisely deciding to enter a plea of guilty. The modest Hopper advisement would be a valuable step in addressing these, and other, real-life consequences. I do not disagree that a Hopper advisement is not necessarily required by the Sixth Amendment [2] or by the Indiana Constitution. See op. at 618. Nor do I advocate that the lack of an advisement would automatically result in reversal of a defendant’s conviction. But the advantages of giving such an advisement, especially at the initial hearing stage of the proceedings, far outweigh any disadvantages of doing so.
In the end I would deny the State’s petition for rehearing, and reaffirm our original opinion in this case. Therefore I respectfully dissent.
SULLIVAN, J., concurs.

. See ABA Standards for Criminal Justice: Collateral Sanctions and Discretionary Disqualification of Convicted Persons 9 (3d ed.2004). As of November 28, 2011, the ABA catalogs 342 adult collateral consequences statutes in Indiana. See Adult Collateral Consequences Project, ABA Criminal Justice Section, http://isrweb.isr.temple.edu/projects/ accproject/pages/GetStateRecords.cfm? State=IN (last visited Nov. 28, 2011).

. I note, however, that the U.S. Supreme Court decision on which the majority relies announces a narrow holding. In fact the Court explicitly declared that "States are free to adopt by statute, rule, or decision any guides to the acceptance of an uncounseled plea they deem useful.” Iowa v. Tovar, 541 U.S. 77, 94, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).