**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2013, 7:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT MARKS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 62A01-1212-CR-591 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PERRY CIRCUIT COURT
The Honorable Lucy Goffinet, Judge
Cause No. 62C01-0809-FD-816

**July 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the appellant-defendant, Robert Marks, appeals the revocation of his probation based on his allegedly invalid guilty plea to a probation violation. Specifically, Marks argues that the record failed to establish that he knowingly, voluntarily, and intelligently waived his right to counsel at the revocation hearing. Marks further asserts that the evidence was insufficient to support the probation revocation.

The State cross-appeals, claiming that we must dismiss this appeal because Marks may only challenge the voluntariness of his guilty plea in a probation revocation proceeding by way of post-conviction relief and not on direct appeal. However, we believe that the issue of whether Marks voluntarily, knowingly, and intelligently waived his right to counsel at the probation revocation hearing does not have to be addressed on post-conviction relief. Thus, we address Marks's arguments on their merits and conclude that the record demonstrates that Marks's waiver of his right to counsel was voluntarily, knowingly, and intelligently made.

We further conclude that the evidence was sufficient to support the revocation of Marks's probation. Indeed, Marks admitted to the violations, and the trial court heard evidence of the violations at the revocation hearing. Thus, we affirm the judgment of the trial court.

## FACTS

On December 16, 2009, the State filed a notice of probation violation against Marks under Cause FD-816, for testing positive for the presence of alcohol on his breath. Marks had pleaded guilty to resisting law enforcement and public intoxication under that

2

cause, where he received a suspended sentence and was placed on probation. Following an admission to the violation, the trial court, on January 24, 2011, ordered Marks to continue probation with additional conditions.

However, prior to the issuance of that order, the State had filed another notice of violation of probation in the same cause on February 12, 2010, which alleged that Marks had been charged with strangulation and domestic battery in cause number FD-83.

On March 21, 2012, the State filed yet another notice of probation violation, alleging that Marks was charged under cause FD-215 in Dubois County with operating a vehicle as a habitual traffic violator, operating a vehicle while intoxicated, operating a vehicle while intoxicated endangering another person, and operating a vehicle with an ACE of .15 or more.[1]

A hearing on that notice of violation was held on July 11, 2012, where Marks appeared pro se. At that hearing, the trial court informed Marks of his rights, including the right to counsel. The trial court also stated that it would appoint an attorney to represent Marks if he could not afford one. Marks was also informed of other rights, including the State's burden, the right to remain silent, and the right to present evidence and face his accusers. Marks indicated that he worked forty hours per week at a masonry company at an hourly rate of $13.50. Marks acknowledged that he understood his rights and the trial judge indicated:

---

[1] Marks was charged with these offenses on March 9, 2012.

3

I will show that Mr. Marks no longer qualifies for court Appointed Counsel. But I will still give you until September the 6th to find an attorney, okay? . . . In [Case 384 and Case 385], [the court-appointed attorney] is not going to represent you anymore. You will either need to hire [the court-appointed attorney] or represent yourself or you can hire an attorney of your choosing.

Appellant's App. p. 7.

At that same hearing, Marks requested the trial court to dispose of all other pending causes against him, which included charges filed under CM-384 and CM-385. CM-384 involved charges of domestic battery and criminal mischief, and the charges filed under CM-385 were offenses of public intoxication and resisting law enforcement. Marks proceeded pro se for the remainder of the hearing.

The trial court conducted a status hearing on September 6, 2012, in FD-816, CM-385, and CM-384. At that hearing, Marks informed the trial court that he and the State had reached an agreement and that a plea agreement was pending. The plea agreement informed Marks that he had the right to counsel and that if he could not afford an attorney, the trial court would appoint one to represent him. Marks and the State executed the plea agreement on October 15, 2012.

At a hearing on October 24, 2012, at which Marks proceeded pro se, the trial court acknowledged that Marks had signed a plea agreement. Marks admitted that he violated the terms of his probation in FD-816, and he admitted to the truth of the facts that were alleged in CM-385. More particularly, Marks admitted that on June 7, 2012, at 1665 13th Street, in Tell City, he damaged some property while drunk and resisted law enforcement

4

officers. Marks purportedly read the plea agreement, which contained all of the conditions agreed to between himself and the State. The agreement called for the trial court to determine what sentence should be imposed in FD-816 and informed Marks that he had the right to counsel, and that if he could not afford an attorney that one would be appointed to represent him.

Thereafter, the trial court conducted a probation revocation hearing on November 21, 2012. At that hearing, Marks admitted that he had pleaded guilty to the charges that were alleged in FD-215. Those charges formed the basis of Marks's notice of probation violation that had been filed in March 2012.

The trial court found that Marks had violated the terms of his probation and ordered him to serve two years of his previously suspended three-year sentence. Marks now appeals.

DISCUSSION AND DECISION

I. Waiver of Right to Counsel

Marks argues that the probation revocation must be set aside because the trial court did not adequately inquire into whether he knowingly, intelligently, and voluntarily waived his right to counsel. Marks claims that the trial court's failure to inquire about "his right to counsel constitutes a deprivation of Due Process." Appellant's Br. p. 9.

We initially observe that the State asserts on cross-appeal that Marks's challenge to the validity of the revocation of probation following a guilty plea must be brought by a petition for post-conviction relief rather than on direct appeal. See Tumulty v. State, 666

5

N.E.2d 394, 396 (Ind. 1996) (holding that post-conviction relief, and not a direct appeal, is the vehicle for challenging a conviction that is the result of a guilty plea). Also, in Huffman v. State, 822 N.E.2d 656, 659-60 (Ind. Ct. App. 2005), a panel of this court applied the holding in Tumulty to probation revocations.

More specifically, in Huffman it was observed that

Post-Conviction Rule 1(1)(a)(5) provides a remedy for Huffman's claim, stipulating that post-conviction relief is available to any person who has been convicted and who asserts that his probation was unlawfully revoked. Furthermore, section (b) of the same rule expressly states that "[e]xcept as otherwise provided in this Rule, it comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence and it shall be used exclusively in place of them."

Id. at 659.

Notwithstanding the decision in Huffman and our Supreme court's holding in Tumulty, which applies to challenging the validity of a conviction based on a guilty plea, several cases on direct appeal have addressed the issue of whether a defendant knowingly, voluntarily, and intelligently waived the right to counsel in a probation revocation proceeding. Sparks v. State, 983 N.E.2d 221 (Ind. Ct. App. 2013); Butler v. State, 951 N.E.2d 255 (Ind. Ct. App. 2011); Cooper v. State, 900 N.E.2d 64, 66-71 (Ind. Ct. App. 2009); Eaton v. State, 894 N.E.2d 213, 216-18 (Ind. Ct. App. 2008). In light of these decisions that have addressed the claim that Marks raises on direct appeal, we decline to adopt the State's position. Thus, we will proceed to address Marks's claims on their merits.

The Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution both guarantee a criminal defendant the right to counsel. Faretta v. California, 422 U.S. 806, 845 (1975); Jones v. State, 783 N.E.2d 1132, 1138 (Ind. 2003). To waive this constitutional right, a defendant "must 'knowingly and intelligently' forgo those relinquished benefits" provided by counsel and be advised of the potential pitfalls surrounding self-representation so that it is clear that "he knows what he is doing and [that] his choice is made with eyes open." Hopper v. State, 957 N.E.2d 613, 618 (Ind. 2011). While there are no magic words that a judge must utter to ensure that a defendant adequately appreciates the nature of the situation, determining whether a defendant's waiver was "knowing and intelligent" depends on the "particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In determining whether a defendant has adequately waived the right to counsel, we consider the following factors: "'(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. '" Hopper, 957 N.E.2d at 618 (quoting Poynter v. State, 749 N.E.2d 1122, 1127-28 (Ind. 2001).

Turning to the circumstances here, including Marks's background, experience, and conduct, the record demonstrates that the trial court informed him of his right to counsel

7

at the initial hearing on the probation violations. Tr. p. 4. The plea agreement also informed Marks of those rights, and he acknowledged that he understood them. Appellant's App. p. 410-44. Marks's dialogues with the trial court concerning his employment status, and his ability to qualify for court-appointed counsel also demonstrate that Marks understood the difference between qualifying for appointed counsel and not qualifying for appointed counsel. Tr. p. 6, 14.

We further note that Marks's background establishes that he has extensive experience in our judicial system, including the courtroom setting. Appellant's App. p. 27, 29, 36. In light of these circumstances, the record supports the determination that Marks clearly understood his right to be represented by counsel and the pitfalls of self-representation. As a result, we find that Marks's waiver of his right to counsel and his decision to proceed pro se were made voluntarily, knowingly, and intelligently. Therefore, Marks's claim fails, and we decline to set aside the revocation of his probation on this basis.

## II. Revocation of Probation—Sufficiency

Marks further claims that the State failed to present sufficient evidence to support the revocation of his probation. Marks argues that the revocation cannot stand because it was "based upon an act that was different, albeit similar, to the violation alleged in the notice [of violation]." Appellant's Br. p. 11.

We first note that probation is a favor granted by the State, not a right to which a defendant is entitled. Butler v. State, 951 N.E.2d 255, 259 (Ind. Ct. App. 2011). While a

8

defendant is entitled to due process in a probation revocation proceeding, he is not entitled to all the rights he enjoyed before the underlying criminal conviction, such as the applicability of the rules of evidence or an elevated burden of proof. Id. A probation revocation hearing is in the nature of a civil proceeding and, therefore, a violation need only be proven by a preponderance of the evidence. Washington v. State, 758 N.E.2d 1014, 1017 (Ind. Ct. App. 2001). A trial court may revoke a defendant's probation upon evidence of the violation of any single term of probation. Id. If there is substantial evidence of probative value to support the trial court's decision that the probationer is guilty of a violation, revocation is appropriate. Id.

Here, Marks asserts that the revocation cannot stand because the terms upon which his probation was revoked were not the terms that were proven at the hearing on October 24, 2012. However, Marks apparently overlooks the fact that the plea agreement that he entered into specifically included his admission that he violated the terms of his probation. Appellant's App. p. 40-41. Moreover, before the trial court revoked Marks's probation, it heard evidence of the charges and guilt in both the notice of violation that was filed on March 21, 2012, as well as the evidence of the charges and guilt in CM-385. Tr. p. 18-23. In other words, Marks admitted his guilt and the existence of charges from both causes, which was proper and consistent with the notice of the probation violation. As a result, Marks has failed to show that his rights were violated or that the trial court's revocation of his probation was improper. Therefore, we decline to set aside the revocation.

9

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.