FILED

Apr 11 2018, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephen Wirthlin,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

April 11, 2018

Court of Appeals Case No.
24A01-1711-CR-2662

Appeal from the Franklin Circuit
Court

The Honorable Clay M.
Kellerman, Judge

Trial Court Cause No.
24C02-1702-F6-174

**Baker, Judge.**

[1]     Stephen Wirthlin appeals the trial court's order denying his motion to withdraw his guilty plea. Wirthlin argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel at the initial or guilty plea hearings and that, as a result, he is entitled to withdraw his plea. We agree. Therefore, we reverse and remand for further proceedings.

## Facts

[2]     On February 28, 2017, the State charged Wirthlin with Level 6 felony possession of methamphetamine and two counts of Level 6 felony dealing in a synthetic drug or synthetic drug lookalike substance. Wirthlin's initial hearing took place on March 7, 2017; before the hearing, he signed a form advising him of his rights. The trial court first showed Wirthlin the document he had signed regarding his rights and asked if he read and signed it; Wirthlin replied, "yes, I did sir, I tried I could the best I could without glasses yet," and when the trial court asked if Wirthlin had any questions about what it meant, Wirthlin said, "[u]m, no I do understand somewhat [sic] of what it means." Appellant's App. Vol. II p. 65. The trial court asked if Wirthlin had read the charges and Wirthlin replied, "yes, as best I could." *Id.* Wirthlin pleaded not guilty to the charges and the following discussion then occurred regarding legal representation:

> Wirthlin:   Um, would I be able to request a fast and speedy trial?
>
> Court:   You can, what are you going to do about an attorney?

Wirthlin:     I'm not sure sir, um I'm being [sic] at this point to being indigent, um I have no employment, I was taking care of my father . . . .

Court:        Well let me stop you, are you asking for a court appointed attorney, or are you going to hire your own?  Or are you going to represent yourself?

Wirthlin:     Um, I'm not sure at this point sir, I just know that um I can't sit out that long; um this gotta be over with.  I'm the caretaker of my old man . . . .

Court:        . . . I'm going to schedule your Jury Trial, May 10th at 8:30 a.m.  Um, and I do want to advise you that if you show up May 10th without an attorney, um, you're going to be held at the same standards as the state of Indiana. . . . [The prosecutor] has been trained of the rules and procedure of the rules and (indiscernible) the rules of substance of law [sic] all of those same things will apply to you.  Um, if you have any motions (indiscernible) or oppose jury instructions, uh, despondent [sic] motions, all of that will need to be filed by the Pre-Trial conference date to be considered uh, by the Court.  Do you have any other questions?

Wirthlin:     (indiscernible) [J]ust curious of how to take care of this just a[s] fast as I can sir I have a father that was supposed to be care taken and he has to have his left leg removed.

Court:        Well do you have any questions about the case?

Wirthlin:     Um, sigh . . . uh . . . .

State: If he's representing himself judge, um he, he can discuss negotiate [sic] with me, if that's what he is getting at. But right at, at during the term that he's representing himself that's fine I'll talk to him after [the] court hearing.

Court: He has the right; again he is representing his [sic] self.

Wirthlin: I'm just trying to figure out the best way to handle this Your Honor.

Court: Well I . . . .

Wirthlin: I can't afford an attorney.

Court: You said you didn't want one though.

Wirthlin: No, I didn't say I didn't want one, I said I couldn't afford one.

Court: But you told me you weren't asking for one.

Wirthlin: Um, well no, no I'm not, I [sic] just I [sic] not sure how to approach this.

Court: Well it's um; you have your court dates.

Wirthlin: Yes sir.

Court: You know what you're charged with.

Wirthlin: Yes sir.

Court: You know what your rights are.

Wirthlin: Yes sir.

Court: You know you have the right to be represented by an attorney [sic] you indicated to the court that you're not asking for one. You've been advised of your, of the perils and [sic] representing yourself um, you have . . . your trial date.

Wirthlin: Yes sir.

Court: If you have, questions or legal advice the court can't give you that that [sic] you can represent yourself or you can um, talk to an attorney. Do you have any other questions about today?

Wirthlin: No sir.

*Id.* at 66-68.

[3] That same day, following the hearing, Wirthlin and the prosecutor engaged in plea negotiations. Without having talked to an attorney, Wirthlin agreed to plead guilty to two of the three charges, with the third to be dismissed. The sentence was left to the trial court's discretion. Wirthlin signed a general document regarding his rights in the guilty plea stage and the impact of a guilty plea; included on the document was a general advisement regarding the right to counsel.

[4] Wirthlin's guilty plea hearing took place that same day—March 7, 2017. At that hearing, the trial court reminded Wirthlin that "[y]ou do have the right to [be] represented by an attorney. Do you understand that by pleading guilty, you're giving that right up?" *Id.* at 71. Wirthlin responded affirmatively. He ultimately pleaded guilty to Level 6 felony possession of methamphetamine and Level 6 felony dealing in a synthetic drug or a synthetic drug lookalike. Following Wirthlin's April 4, 2017, sentencing hearing, the trial court sentenced him to concurrent terms of twenty-four months incarceration with sixteen months suspended to probation.

[5] On September 1, 2017, Wirthlin, by counsel, filed a motion to withdraw his guilty plea.[1] He argued that he did not knowingly and voluntarily plead guilty because the plea was a product of an invalid waiver of counsel, which was premised on his misunderstanding that a waiver of counsel was necessary to quickly resolve the case. Following a hearing, the trial court denied Wirthlin's motion on November 3, 2017. The trial court noted that Wirthlin signed a document regarding his rights, including the right to legal representation, and that it orally advised him of his rights, which Wirthlin indicated he understood. Additionally,

---

[1] Wirthlin had already initiated a direct appeal but voluntarily withdrew that appeal so that he could move to withdraw the guilty plea.

3.      . . . [Wirthlin] indicated he was not sure [what he planned to do about an attorney] but never requested the Court to appoint counsel.

4.      . . . Again, [Wirthlin] never requested counsel. As the hearing proceeded the Court again inquired if [Wirthlin] was representing himself. Again, specifically, [Wirthlin] indicated he was not asking for counsel . . . .

5.      Therefore, at the Initial Hearing, [Wirthlin] was advised in writing, and several times orally, that he has the right to be represented by an attorney and that the Court can appoint one to him. At no time did [Wirthlin] ever ask for Court appointed counsel.

6.      Later in the morning on March 7, 2017, the State of Indiana indicated that [Wirthlin] wished to plead guilty. [Wirthlin] was given another written advisement of rights form which also included specific language on the right to counsel and the waiver of counsel. [Wirthlin] signed said document . . . .

***

9.      During the plea hearing, [Wirthlin] was advised of his rights, the nature of the charges, that by pleading guilty he was waiving certain rights, the possible penalties he could receive if found guilty and was questioned to ensure that his plea was not the product of coercion. . . . Again, [Wirthlin] never asked for the appointment of counsel.

***

11. . . . At no time during the plea hearing did [Wirthlin] express any doubts about his rights, his waiver of rights, the nature of the charges against him or the possible penalties he could receive. At no time during any of the three hearings in this matter did [Wirthlin] ever request counsel.

*Id.* at 87-89 (internal citation omitted). Wirthlin now appeals.

# Discussion and Decision

[6] Wirthlin argues that the trial court should have granted his motion to withdraw his guilty plea. Motions to withdraw guilty pleas are governed by statute, which states as follows, in relevant part:

(c) After being sentenced following a plea of guilty . . . , the convicted person may not as a matter of right withdraw the plea. However, upon motion of the convicted person, the court *shall* vacate the judgment and allow the withdrawal whenever the convicted person proves that withdrawal is necessary to correct a manifest injustice. A motion to vacate judgment and withdraw the plea made under this subsection shall be treated by the court as a petition for postconviction relief under the Indiana Rules of Procedure for Postconviction Remedies. For purposes of this section, withdrawal of the plea is necessary to correct a manifest injustice whenever:

(1) the convicted person was denied the effective assistance of counsel . . . .

***

(e)     Upon any motion made under this section, the moving party has the burden of establishing his grounds for relief by a preponderance of the evidence. . . .

I.C. § 35-35-1-4 (emphasis added).  Additionally, Indiana Code section 35-35-1-1 states plainly that a guilty plea "shall not be accepted from a defendant unrepresented by counsel who has not freely and knowingly waived his right to counsel."  *See also Laffler v. Cooper*, 566 U.S. 156, 162 (2012) (holding that plea negotiations are a critical stage to which the constitutional right to counsel applies); *Iowa v. Tovar*, 541 U.S. 77, 81, 87 (2004) (same with respect to entry of guilty plea).

[7]     In this case, to determine whether Wirthlin should have been permitted to withdraw his guilty plea, we must first determine whether he knowingly, voluntarily, and intelligently waived his right to counsel.  As an initial matter, we note our marked skepticism that he waived his right to counsel *at all*.  At no point during the initial hearing did he indicate a wish to represent himself.  More than once, he expressed confusion about the proceedings; more than once, he indicated that he was unable to afford an attorney; and more than once, he indicated a desire that the proceedings move as quickly as possible so that he could get home to care for his ailing father.  With respect to legal representation, Wirthlin said "I'm not sure," "I'm not sure at this point," "I'm just trying to figure out the best way to handle this," "I didn't say I didn't want [an attorney], I said I couldn't afford one," and "I['m] just not sure how to approach this."  Appellant's App. Vol. II p. 67-68.

The trial court improperly placed the burden on Wirthlin by finding that he did not invoke his right to counsel by requesting a public defender. It is well established that there is a strong presumption against the waiver of the right to counsel, and it is the *trial court* that bears the "'serious and weighty responsibility . . . to determine whether there was an intelligent and competent waiver. . . . To discharge the duty imposed, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.'" *Eaton v. State*, 894 N.E.2d 213, 217 (Ind. Ct. App. 2008) (quoting *Mitchell v. State*, 417 N.E.2d 364, 369 (Ind. Ct. App. 1981) (internal citations omitted)). The fact that Wirthlin did not explicitly request appointment of a public defender is of no moment, and the trial court erred by burdening him with the obligation to do so.[2]

Although we are inclined to find that Wirthlin did not waive his right to counsel at all, the State insists that he did so by virtue of the written forms he signed before the initial and guilty plea hearings; therefore, we will consider whether those documents, in addition to the oral advisements, amount to a knowing and voluntary waiver.[3] We observe, first, that neither of these

___

[2] Moreover, the fact that the prosecutor later represented to the trial court that he, too, had told Wirthlin of the right to counsel and that Wirthlin had waived it does not serve to satisfy the duty of the trial court.

[3] The State also argues that Wirthlin's arguments fail because he "does not claim that he was actually innocent or that he would not have pled guilty had he been advised differently." Appellee's Br. p. 25. But Indiana Code section 35-35-1-4(c) states that the motion to withdraw a guilty plea "need not allege, and it need not be proved, that the convicted person is innocent of the crime charged or that he has a valid defense" to be entitled to withdrawal. Moreover, there is no prejudice element to a claim that a waiver of legal representation was not knowing, intelligent, and voluntary. Therefore, this argument is unavailing.

documents constitutes an explicit and thorough waiver of his right to counsel. *See Hopper v. State*, 957 N.E.2d 613, 615 (Ind. 2011) (defendant waived right to counsel where he signed a waiver of attorney provision stating "I do not wish to be represented by an attorney in this case," "I understand that I have the right to an attorney," "I know that if I am without funds . . . the Judge will appoint a Public Defender to represent me," and "I freely and voluntarily give up my right to be represented by an attorney"). Instead, the documents signed by Wirthlin were merely the boilerplate advisements of rights forms provided to every criminal defendant at the initial hearing and, when relevant, at the guilty plea hearing. *See* Appellant's App. Vol. II p. 44 (guilty plea form informing defendant of the right to an attorney and the right to an appointed attorney when needed), 46 (initial hearing form informing defendant of the same).

[10] "When a defendant asserts the right to self-representation, the court should tell the defendant of the 'dangers and disadvantages of self-representation.'" *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). Although a trial court need not follow specific "talking points" when advising a defendant of the dangers and disadvantages of proceeding without counsel, a trial court must come to a "considered determination" that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel. *Id.*

[11] To determine whether a knowing, voluntary, and intelligent waiver has occurred, an appellate court considers these four factors: (1) the extent of the trial court's inquiry into the defendant's decision, (2) other evidence in the

record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. *E.g.*, *id.* at 1127-28. A lack of any advisement regarding the dangers and disadvantages of self-representation "weighs heavily against finding a knowing and intelligent waiver." *Id.* at 1128. The "importance of the right to counsel cautions that trial courts should at a minimum reasonably inform such defendants of the dangers and disadvantages of proceeding without counsel." *Id.*

[12] First, as to the extent of the trial court's inquiry, it did confirm that Wirthlin had signed the requisite forms before both hearings, which contained advisements regarding his right to counsel, and that he understood them.[4] It made no inquiry whatsoever, however, into Wirthlin's purported "decision" to waive his right to representation. And indeed, as noted above, at the initial hearing, Wirthlin never once unequivocally stated that he wished to represent himself. It is far from apparent that any such "decision" had been made, and the lack of inquiry into Wirthlin's thought process only exacerbates the uncertainty.

---

[4] Moreover, we note that it was not wholly clear that Wirthlin did, in fact, read and understand the advisement of rights form before the initial hearing. He stated, "I tried the best I could without glasses" and said, "I do understand somewhat [sic] of what it means." Appellant's App. Vol. II p. 65.

[13] Second, as to whether Wirthlin understood the dangers and disadvantages of self-representation, the trial court did provide a somewhat muddled advisement that if he went to trial, he would be held to the same standard as the prosecutor, expected to comply with the law and legal procedure, and expected to engage in motion practice and discovery. This advisement meets the bare minimum expected of a trial court.

[14] Third, as to Wirthlin's background and experience, while he has a limited criminal history, the instant offenses are his first felony charges. He has ten prior misdemeanor convictions, eight of which occurred twenty-four years ago and are for passing bad checks. He has been on probation twice. Wirthlin's limited background and experience with the criminal justice system does not lead us to conclude that his purported waiver of his right to counsel was knowing, intelligent, and voluntary.

[15] Fourth, as to the context of the purported waiver, it is apparent from the transcript that Wirthlin's primary concern was the speed at which he could get these matters resolved. He was worried about his ailing father, for whom he is the primary caregiver, and appears to have mistakenly concluded that the only way to get the charges resolved quickly was to proceed pro se.[5] Several times during the initial hearing, Wirthlin expressed confusion and uncertainty, and

[5] The prosecutor also stated that he could negotiate with Wirthlin that day if he proceeded pro se, perhaps adding to Wirthlin's sense of urgency. No one advised Wirthlin that an attorney could quickly seek a bond reduction.

rather than take the time to probe his thought process and guide him, the trial court was all too quick to interpret confusion and uncertainty as an unequivocal decision to proceed pro se. Then, immediately after that hearing concluded, while still in court, pro se Wirthlin and the prosecutor engaged in plea negotiations. The guilty plea hearing took place that same morning.

[16] We acknowledge that Wirthlin signed the documents pointed to by the State, but those documents do not, and cannot, suffice to fulfill the trial court's responsibility to ensure a knowing, intelligent, and voluntary waiver of counsel. If these documents were enough, trial courts would not need to engage in any discussion of these matters with defendants, but courts of this State have quite clearly held that there is, indeed, such an obligation.

[17] Under these circumstances, we find that Wirthlin did not knowingly, intelligently, and voluntarily waive his right to counsel. Consequently, the guilty plea should not have been accepted by the trial court. I.C. § 35-35-1-1. But as the plea was accepted and Wirthlin was sentenced thereafter, we find that it was necessary to grant Wirthlin's motion to withdraw the plea to correct a manifest injustice, namely, that Wirthlin was denied the effective assistance of counsel. I.C. § 35-35-1-4(c). Therefore, we reverse and remand for further proceedings.

[18] The judgment of the trial court is reversed and remanded with instructions to withdraw Wirthlin's guilty plea, vacate the convictions and sentences, and for further proceedings.

Kirsch, J., and Bradford, J., concur.