## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 19 2019, 6:04 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chad A. Phipps,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 19, 2019<br><br>Court of Appeals Case No.<br>19A-CR-813<br><br>Appeal from the Clay Circuit Court<br><br>The Honorable Joseph D. Trout, Judge<br><br>Trial Court Cause No.<br>11C01-1803-F5-198 |

**Tavitas, Judge.**

## Case Summary

Chad Phipps appeals the trial court's revocation of community corrections and his subsequent placement in the Indiana Department of Correction ("DOC"). We reverse and remand.

## Issues

Phipps raises two issues for our review; however, we find one issue dispositive, which we restate as whether Phipps knowingly, voluntarily, and intentionally waived his right to counsel at the community corrections revocation hearing.

## Facts

On March 13, 2018, the State charged Phipps with Count I, carrying a handgun without a license, a Level 5 felony; Count II, possession of altered handgun, a Level 5 felony; Count III, possession of methamphetamine, a Level 5 felony; Count IV, resisting law enforcement, a Class A misdemeanor; Count V, possession of marijuana, a Class B misdemeanor; and Count VI, possession of paraphernalia, a Class C misdemeanor. On September 5, 2018, Phipps pleaded guilty, pursuant to a plea agreement, to Counts I, II, III, and IV, and the State dismissed Counts V and VI.

Pursuant to the plea agreement, Phipps agreed with the sentencing recommendation that, "if he is found to be in violation of the rules of electronic home detention, he will serve the entire remainder of his sentence at the Indiana Department of Correction." *Id.* at 19. On October 1, 2018, the trial court sentenced Phipps for Counts I, II, and III, to four years each fully

executed at the DOC to run concurrently with one another, and for Count IV, one year fully executed at the DOC to run concurrently with Counts I, II, and III.[1] The trial court also calculated credit time and ordered that the "remaining executed portion of [Phipps'] sentence shall be served as a direct commitment on electronic home detention, to be monitored by Clay County Community Corrections, subject to their rules, regulations, and fees." *Id.* at 42.

[5] On March 8, 2019, the trial court issued a warrant for Phipps, ordering Phipps to appear and show cause as to why Phipps violated the terms of his home detention. On March 12, 2019, the trial court held a hearing on the petition to revoke. Phipps appeared pro se.

[6] The trial court read the allegations in the probable cause affidavit to Phipps, namely, that Phipps, on different occasions: did not attend community service; called in hours after his community service was set to begin stating he overslept; told the community corrections employees he would not do community service because he was not getting paid; and showed up to community service but said he had to leave to take care of his children or because he was not feeling well. The trial court and Phipps then engaged in the following colloquy:

> THE COURT: * * * * * I could return you to community service, I could modify your sentence, I could order you to serve any or all of the remaining sentence as an incarcerated person. You have rights. You have the right to a timely hearing usually

---

[1] This sentence is consistent with the terms of the plea agreement.

within ten days to fourteen days, that's how fast it goes, and then you have the right to an attorney. If you cannot afford an attorney one could be appointed for you. You have a right at the hearing to face your accusers in open court, confront them and cross examine them, or have your lawyer do it for you. You have the right to use court subpoenas to compel witnesses and evidence to the trial or hearing and you have the right to make the State prove you violated your [c]ommunity [c]orrections' direct commitment by a preponderance of the evidence and you only have the right to remain silent as to any allegations of criminal activity. So if this is all about performing community service you can be called to the stand and testify under oath. You understand?

[PHIPPS]: Yes.

THE COURT: Okay. You got [sic] two choices here today. You can admit you violated your community corrections[] agreement on electronic in-home detention or you can deny it. If you deny it I will set it for that hearing and I will talk to you about what you want to do about a lawyer.

[PHIPPS]: I admit that I did – I wasn't doing my community service. That was the only reason why they could violate me. Everything else was – I've done. . . .

* * * * *

THE COURT: All right. Before I can allow you to admit I need you to know that when you admit you waive and give up those constitutional rights I just had and the possible penalty is just what I said when I read you the petition. Do you want me to go . . . And it's all up to me.

[PHIPPS]: Yeah.

Tr. Vol. II pp. 60, 61, 64.

[7] Phipps was then placed under oath, and the State asked Phipps if he "violate[d] the terms and conditions of Clay County Community Corrections by not completing community service as ordered" to which Phipps responded, "yes." *Id.* at 66. The trial court then found that Phipps "made a knowing, intelligent, and voluntary admission, factually based on [his] own sworn testimony." *Id.* at 67. The same day, the trial court entered an order, stating that Phipps "waive[d] rights and entere[d] an admission." Appellant's App. Vol. II p. 46. Accordingly, the trial court revoked Phipps' direct placement commitment.

[8] The next day, on March 13, 2019, the trial court held a sentencing hearing. The trial court asked Phipps if he brought witnesses or anyone to speak on his behalf, to which Phipps indicated he did not.[2] Phipps requested the trial court to reinstate his commitment to house arrest and stated that the only reason he did not perform community service was due to caring for his young children. The State then asked to cross-examine Phipps because Phipps was "downplaying and basically withdrawing his admission by making excuses as to why it's impossible for him to do everything." Tr. Vol. II p. 81. The State also called Mary Brown from community corrections who testified that

---

[2] Phipps' response was inaudible according to the transcript; however, the trial court's response indicates that Phipps did not bring any witnesses.

community corrections sent Phipps to CFA Staffing to try and assist Phipps in obtaining employment, but Phipps declined several recommendations.

[9] Brown further testified that Phipps arrived late to serve his community service many days and claimed he woke up late; and that Phipps stated many times that Phipps did not want to do community service. Additionally, Brown testified that community corrections attempted to work around Phipps' childcare schedule by scheduling Phipps' community service during the morning hours because Phipps' wife could work in the afternoon. Phipps testified that much of Brown's testimony was not true.

[10] The same day, the trial court entered a sentencing order, and ordered Phipps to serve 1,137 days at the DOC. Phipps now appeals.

## Analysis

[11] We address the dispositive issue of whether Phipps knowingly, voluntarily, and intentionally waived his right to counsel at his community corrections revocation hearing.[3] "The Sixth Amendment to the U.S. Constitution and

---

[3] The State argues that we should not address the validity of an admission on direct appeal. Although we address it through the waiver of counsel, we acknowledge, as our Court did in *Sparks v. State,* 983 N.E.2d 221, 224 n.1 (Ind. Ct. App. 2013), *aff'd on reh'g,* that:

> A panel of this court has held that an alleged error during a guilty plea in a probation revocation hearing must be challenged by a post-conviction relief petition. *Huffman v. State,* 822 N.E.2d 656, 660 (Ind. Ct. App. 2005). The court in *Huffman* based its decision on our [S]upreme [C]ourt's decision in *Tumulty v. State,* 666 N.E.2d 394, 396 (Ind. 1996), in which the court held that a guilty plea leading to a criminal conviction must be challenged by a postconviction relief petition and not a direct appeal. The issue of whether the rule in *Tumulty* should be extended to probation revocation hearings remains unsettled. We have chosen to address the probation revocation issue in this case on the merits.

Article 1, [S]ection 13 of the Indiana Constitution guarantee a criminal defendant the right to appointed counsel." *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003). "Accordingly, when a criminal defendant waives his right to counsel and elects to proceed *pro se,* we must decide whether the trial court properly determined that the defendant's waiver was knowing, intelligent, and voluntary." *Id.* "Waiver of assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Id.*

[12] "It is well established that there is a strong presumption against the waiver of the right to counsel, and it is the *trial court* that bears the 'serious and weighty responsibility to determine whether there was an intelligent and competent waiver.'" *Wirthlin v. State,* 99 N.E.3d 699, 704 (Ind. Ct. App. 2018) (quoting *Eaton v. State,* 894 N.E.2d 213, 217 (Ind. Ct. App. 2008)) (emphasis supplied), *trans. denied.* "'When a defendant asserts the right to self-representation, the court should tell the defendant of the dangers and disadvantages of self-representation.'" *Wirthlin,* 99 N.E.3d at 705 (quoting *Poynter v. State,* 749 N.E.2d 1122, 1126 (Ind. 2001)). "Although a trial court need not follow specific talking points when advising a defendant of the dangers and disadvantages of proceeding without counsel, a trial court must come to a considered determination that the defendant is making a knowing, voluntary, and intelligent waiver of his right to counsel." *Id.* (internal quotations omitted).

---

*Sparks,* 983 N.E.2d at 224 n.1. As in *Sparks,* we choose to address the issue on the merits.

"We review de novo a trial court's finding that a defendant waived his right to counsel." *Butler v. State,* 951 N.E.2d 255, 260 (Ind. Ct. App. 2011).

[13] The right to counsel extends to the revocation of probation or, in this case, community corrections placement. *See Allen v. State,* 86 N.E.3d 391, 394 (Ind. Ct. App. 2017) ("When faced with a petition to revoke probation, a probationer is not entitled to the full panoply of rights he enjoyed prior to the conviction. . . . However, a petitioner is entitled to certain due process protections such as representation by counsel."); *see also Hodges v. State,* 997 N.E.2d 419, 421 (Ind. Ct. App. 2013) ("[A] person serving a community corrections placement is entitled to certain due process protections before the placement is revoked, including the right to counsel."). Accordingly, when a defendant is guaranteed the right to counsel, "we must be confident that the record reflects that the right to counsel was voluntarily, knowingly, and intelligently waived." *Allen,* 86 N.E.3d 391, 394 (Ind. Ct. App. 2017).

[14] The State cites *Butler* for the proposition that "when a probationer proceeds pro se and chooses to admit rather than to challenge his alleged probation violation, his knowing, intelligent, and voluntary waiver of counsel may be established even if the record does not show that he was warned of the pitfalls of self-representation." *Butler,* 951 N.E.2d at 259. While *Butler* stands for this proposition, the facts of *Butler* are distinguishable. In *Butler,* our Court found Butler's argument was unavailing, because:

> We fail to see any difference between the explicit advisement of
> the right to counsel . . . and the advisement given in this case. To

the extent that Butler argues that the court's advisement was too perfunctory because the court did not repeatedly advise him of his right to counsel, we disagree that a court must make repeated advisements. Here, the trial court told Butler that he had a right to an attorney and that if he wanted an attorney but could not afford one, an attorney would be appointed for him. The court then asked Butler whether he wanted an attorney. Butler said no. The court verified with Butler that he was going to proceed at the hearing without an attorney and then said, "And you understand you have a right to a lawyer?" Butler said yes. The record shows that the trial court advised Butler of his right to counsel and that Butler unequivocally waived that right.

*Id.* at 261 (internal quotations omitted).

[15] Here, the trial court advised Phipps of his right to an attorney; however, the trial court then qualified its advisement and told Phipps that Phipps had two options: to admit the offense; or to deny the violation and speak with an attorney. Pursuant to Indiana Code Section 35-38-2-3(e), which codifies a defendant's due process rights when a petition to revoke probation is filed, "A person may admit to a violation of probation and waive the right to a probation violation hearing *after being offered the opportunity to consult with an attorney*." (emphasis added). Erroneously here, the trial court suggested that Phipps only had the right to an attorney if he denied the allegations.

[16] After issuing the misleading statement regarding Phipps' right to an attorney, the trial court failed to ascertain whether Phipps wanted to consult with a private attorney or have counsel appointed for him; or whether Phipps sought to waive his right to counsel and represent himself. *See e.g., Bumbalough v. State,*

873 N.E.2d 1099, 1102 (Ind. Ct. App. 2007) ("Here, the record establishes that Bumbalough was advised of his right to counsel by means of videotape. However, the record is silent as to whether the trial court determined that Bumbalough's waiver [of counsel] was voluntary, knowing, and intelligent."). The trial court merely informed Phipps that admitting to the violation meant that Phipps was "waiv[ing] and giv[ing] up those constitutional rights. . . ." without further inquiry to ascertain whether Phipps was voluntarily, knowingly, and intelligent waiving his right to counsel. Tr. Vol. II p. 64.

[17] The case before us stands in contrast to *Cooper v. State,* 900 N.E.2d 64, 70-71 (Ind. Ct. App. 2009). In *Cooper,* "Cooper expressed an unequivocal desire to proceed without counsel at his probation revocation proceeding. . . . Furthermore, the various questions and answers regarding Cooper's background, experience, and conduct support the conclusion that Cooper's waiver of his right to representation was voluntary, knowing, and intelligent." (quotations omitted). The trial court here did not adequately question Phipps to support its conclusion that Phipps waived his right to counsel at the community corrections revocation hearing.

[18] Moreover, while Phipps' argument focuses on the community correction revocation hearing, we note that, at the sentencing hearing the next day, the trial court began the hearing with: "Defendant waives his rights and enters an admission." Tr. Vol. II p. 72. The record is devoid of any follow-up at the sentencing hearing with regard to whether Phipps waived his right to an attorney at his sentencing hearing. *See Puckett v. State,* 843 N.E.2d 959, 965

(Ind. Ct. App. 2006) ("[I]t is well settled that sentencing is a critical stage of the proceedings at which a defendant is entitled to representation by counsel."). This is significant considering that Phipps stood to serve a large portion of his sentence in the DOC as a result of his community corrections revocation.

[19] Accordingly, the record before us fails to demonstrate that Phipps knowingly, voluntarily, and intelligently waived his right to counsel. We reverse and remand for a new hearing on the petition to revoke Phipps' community corrections placement.

## Conclusion

[20] Phipps did not knowingly, voluntarily, and intelligently waive his right to counsel. We reverse and remand.

[21] Reversed and remanded.


Brown, J., concur.

Altice, J., concur in result without opinion.