**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RUTH ANN JOHNSON**
**LILABERDIA BATTIES**
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LAWRENCE HARRIS,                              )
                                             )
    Appellant-Defendant,                    )
                                             )
        vs.                              )   No. 49A02-1301-CR-80
                                             )
STATE OF INDIANA,                            )
                                             )
    Appellee-Plaintiff.                     )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila Carlisle, Judge
Cause No. 49G03-1202-FB-11073

**October 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Lawrence Harris appeals the trial court's order revoking his placement in community corrections and committing him to the Indiana Department of Correction ("DOC") to execute the remainder of his sentence. Harris presents two issues for our review, which we restate as: 1) whether the trial court abused its discretion when it revoked Harris's placement in community corrections; and 2) whether the trial court abused its discretion in ordering the execution of Harris's sentence in the DOC. Concluding the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

On February 21, 2012, the State charged Harris with burglary, a Class B felony, and theft, a Class D felony. The State and Harris entered into a plea agreement in which Harris agreed to plead guilty to burglary in exchange for the State dismissing the theft charge. In April 2012, the trial court, pursuant to the terms of the plea agreement, sentenced Harris to seven years, six of which were to be served on work release through Marion County Community Corrections, with the final year suspended to probation.

In June 2012, community corrections filed a Notice of Community Corrections Violation alleging Harris failed to return as scheduled from an approved pass. The State also filed a Notice of Probation Violation based on this incident. Harris admitted the violation and the trial court took disposition under advisement pending completion of Harris's community corrections placement although it did modify his placement to Brandon Hall residential facility. In October 2012, community corrections filed a report advising the court that Harris had been disciplined due to bringing a controlled substance into the facility and using tobacco. Also in October 2012, community corrections filed a

Notice of Community Corrections Violation alleging that Harris did not return to Brandon Hall following an approved absentee pass. The Notice was later withdrawn because Harris did return to the facility, albeit two hours late.

Subsequently, on December 14, 2012, at approximately 7:00 a.m., Harris received a pass approving his absence from Brandon Hall to visit Drug Lab. He was required to return by 9:30 a.m. However, as of 3:00 p.m., when a Notice of Community Corrections Violation was filed, Harris had not returned to the facility, and community corrections was unable to contact him. Brandon Hall policy is that a resident is designated "Failure to Return" two hours after the scheduled return time. Harris was missing for five days, after which he voluntarily surrendered to authorities.

During the hearing on the Notice of Community Corrections Violation, Harris admitted that he failed to return on time but indicated that extenuating circumstances were the reason for his unapproved absence – specifically, Harris had been absent to attend his sister's funeral. Harris argued that his sister's death was a mitigating circumstance that the court should take into consideration in its disposition. The trial court revoked his placement in community corrections and ordered him to serve the remainder of his six year sentence in the DOC. Harris now appeals.

Discussion and Decision

I. Standard of Review

Placement in community corrections is a "matter of grace" and a "conditional liberty that is a favor, not a right." Toomey v. State, 887 N.E.2d 122, 124 (Ind. Ct. App. 2008) (quoting Million v. State, 646 N.E.2d 998, 1001 (Ind. Ct. App. 1995)). Further, "[b]oth probation and community corrections programs serve as alternatives to

3

commitment in the DOC and both are made at the sole discretion of the trial court."

Holmes v. State, 923 N.E.2d 479, 482 (Ind. Ct. App. 2010).  A reviewing court treats a

petition to revoke placement in a community corrections program the same as a petition

to revoke probation.  Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999).  Therefore, when

reviewing the trial court's decision, we utilize the abuse of discretion standard.  Prewitt v.

State, 878 N.E.2d 184, 188 (Ind. 2007).  An abuse of discretion occurs when the decision

is clearly against the logic and effect of the facts and circumstances before the court.  Id.

## II.  Revocation of Community Corrections Placement

Harris argues the trial court abused its discretion when it revoked his placement in

community corrections.  Revocation is a two-step process.  Morrissey v. Brewer, 408

U.S. 471, 485 (1972).  First, the court must make a factual determination that a violation

of a condition of probation actually occurred.  Id.  Second, if the violation is proven, the

trial court must determine whether the violation warrants revocation of the probation.  Id.

Indiana Code section 35-38-2-3 codifies certain due process requirements, including an

evidentiary hearing.  See Butler v. State, 951 N.E.2d 255, 259 (Ind. Ct. App. 2011).

However, when a probationer admits to a violation, the procedural safeguards and the

evidentiary hearing are not required.  Parker v. State, 676 N.E.2d 1083, 1085 (Ind. Ct.

App. 1997).  Instead, the trial court can proceed directly to the second step and determine

whether the violation warrants revocation.  Id.  The probationer is entitled in either case

to present mitigating evidence to demonstrate the violation does not warrant revocation.

Sparks v. State, 983 N.E.2d 221, 225 (Ind. Ct. App. 2013).

A single violation is sufficient to warrant revocation.  Hubbard v. State, 683

N.E.2d 618, 622 (Ind. Ct. App. 1997).  For example, in Toomey v. State, we held the

defendant's failure to return to community corrections for four days after his scheduled return time was alone sufficient for revocation of his placement in community corrections. 887 N.E.2d at 125. Here, the trial court revoked Harris's community corrections placement upon finding that Harris had violated the terms of his placement by absconding for five days on a two-hour pass. During the hearing, Harris admitted to the violation. However, he argued that he failed to return because he was attending his sister's funeral and then obliging her last wish by taking care of her husband thereafter. Further, he noted that he voluntarily surrendered to authorities. Harris contends these circumstances "should have weighed heavily on the determination to revoke his placement." Brief of Appellant at 6. Harris's argument on appeal is merely a request that we reweigh the evidence in his favor, which we will not do. See Dokes v. State, 971 N.E.2d 178, 179 (Ind. Ct. App. 2012) (noting that on review of probation revocation, "we will look to the evidence most favorable to the State and neither reweigh the evidence nor judge the credibility of witnesses."). Harris had previous incidents of failing to return, knew how to obtain approval for an absentee pass yet failed to do so here, and did not contact anyone at the facility to explain his absence. The trial court did not abuse its discretion when it revoked Harris's community corrections placement after he repeatedly – and in this particular instance, egregiously – violated the terms of that placement.

### III. Sentence after Revocation

Harris argues that even though he violated the terms of his community corrections placement, the trial court abused its discretion in ordering a fully-executed sentence in the DOC as a sanction for the violation. Upon finding a community corrections violation, the trial court at its discretion may impose one or more of the following sanctions: 1) change

5

the terms of the placement; 2) continue the placement; or 3) revoke the placement and commit the person to the DOC for the remainder of the sentence. Ind. Code § 35-38-2.6-5.

Here, the trial court revoked Harris's placement and committed him to the DOC for the remainder of his six year sentence upon finding that on multiple occasions, Harris had violated the terms of his placement in community corrections. Specifically, the first violation occurred in June 2012, when he returned to the facility one day late. The trial court took disposition on that violation under advisement pending completion of Harris's placement. The second alleged violation – although the formal notice thereof was later withdrawn by the State – occurred in October 2012, when he returned to the facility two hours late. And finally, the December 2012 violation, when he failed to return for five days. On each occasion, Harris was granted an absentee pass but failed to return at the scheduled time. As the trial court stated, Harris has been given ample opportunity to benefit from his community corrections placement, and instead, he has made the conscious decision to disregard the terms of his placement and take advantage of the relative freedom afforded by community corrections versus incarceration. Moreover, that Harris voluntarily returned from an unapproved absence does not mitigate the fact that he violated the terms of his placement by being absent in the first place.

Harris also contends the trial court failed to properly consider the extenuating circumstances of his December 14, 2012, departure. He concedes that the circumstances of his departure are not a defense, but suggests they should be considered in mitigating the sanction. Harris argues the loss of his sister obstructed his thought processes and clouded his judgment. This argument lacks merit for two reasons. First, Harris did not

6

return after his sister's funeral but remained absent for several additional days. Second, Harris was familiar with the absentee pass process, as evidenced by his repeated use of the process. Using the absentee pass process for his sister's funeral would have preempted a violation, assuming he had returned as scheduled. Additionally, the trial court did consider the circumstances of Harris's absence and indicated that had Harris returned after his sister's funeral – and not four days later – it might have factored those circumstances into its determination of the appropriate sanction. But noting the length of his absence and his previous violations, the trial court imposed what it believed to be the appropriate consequence for Harris's violation, and we cannot say that the trial court abused its discretion when it ordered Harris to execute the remainder of his sentence in the DOC.

## Conclusion

We affirm the trial court's revocation of Harris's placement in community corrections and its order committing him to the DOC to serve the remainder of his sentence.

Affirmed.

RILEY, J., and KIRSCH, J., concur.