## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 02 2019, 6:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
LaPlante LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob Maden,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 2, 2019

Court of Appeals Case No.
19A-CR-505

Appeal from the Vanderburgh
Circuit Court

The Honorable Michael J. Cox,
Magistrate

Trial Court Cause Nos.
82C01-1704-F3-2150
82C01-1808-F6-5611

**Baker, Judge.**

[1]     Jacob Maden appeals the revocation of his probation, arguing that the trial court violated his due process rights; simultaneously, Maden appeals the sentence imposed by the trial court after he pleaded guilty to Level 6 Felony Escape, arguing that the sentence is inappropriate in light of the nature of the offense and his character. Finding no violation and the sentence not inappropriate, we affirm.

# Facts

[2]     The facts and circumstances surrounding this case are difficult to discern. The following comes from what little information exists in the record.

[3]     One evening, A.M. and H.D. met up with seventeen-year-old Maden and J.M. to purchase a cell phone. Maden and J.M. got into the back seat of H.D.'s car to complete the transaction. Before the exchange was finalized, Maden lifted his shirt to reveal what A.M. and H.D. believed to be a gun and pointed it at H.D. Then, J.M. "wrapped a lanyard around the neck of A.M." Appellant's App. Vol. II p. 8. Maden and J.M. promptly fled the scene with both the money and the cell phone. With A.M. and H.D.'s assistance, officers from the Evansville Police Department located and arrested Maden and J.M.

[4]     Under Cause Number 82C01-1704-F3-2150 (Cause 2150), on April 11, 2017, the State charged Maden with two counts of Level 3 felony armed robbery. Maden was then released on bond, but on August 1, 2017, the State filed a petition to revoke bond and issued a warrant for Maden's arrest. Finally, on

August 11, 2017, Maden pleaded guilty as charged in exchange for a three-year sentencing cap. Then, on September 12, 2017, the trial court sentenced Maden to three years for each armed robbery count to be served concurrently in the Division of Youth Services at the Department of Correction (DOC).

[5] On January 23, 2018, Maden filed a petition to modify his sentence so that he would not be immediately transferred to an adult facility once he turned eighteen. The trial court granted this petition, and on May 25, 2018, modified Maden's sentence to three years of home detention through electronic tracking with specific conditions: placement with a guardian, submission to health evaluations, recommended follow-up mental health treatment, required study to obtain a high school diploma, and no contact with the robbery victims.

[6] On June 14, 2018, the State filed a petition to revoke probation under Cause 2150, alleging that Maden had illegally consumed vodka. Maden admitted to violating probation and was sentenced to eight days in the Vanderburgh County Jail. After those eight days, the trial court then placed Maden back under home detention through electronic monitoring and ordered him to complete 100 hours of community service. On August 8, 2018, the State filed another petition to revoke probation under Cause 2150, alleging that Maden had removed his electronic monitoring device. Additionally, under Cause Number 82C01-1808-F6-5611 (Cause 5611), the State charged Maden with one count of Level 6 felony escape.

[7] On December 12, 2018, the trial court held a hearing on both the petition to revoke (Cause 2150) and the escape charge (Cause 5611). At that hearing, the trial court said the following:

> The Court: Were you present when I read everyone their rights?
>
> [Maden]: Yes, ma'am. Can I speak?
>
> The Court: You should wait a minute. Did you understand all those rights?
>
> [Maden]: Yeah, I understand them.

Tr. Vol. II p. 4-5. The trial court then asked Maden if he wanted an attorney for the hearing and the ensuing proceedings. Maden asked if he could represent himself, but the trial court advised against this and warned that he would be held to the same standard as an attorney if he did so. Still, Maden insisted that he wanted to represent himself. The trial court granted his request and continued the hearing until January 9, 2019.

[8] At that hearing, Maden appeared pro se along with stand-by counsel as appointed by the trial court. The State offered a standard one-year executed agreement for the Level 6 felony escape charge under Cause 5611, which the trial court denied. As the trial court was about to set the matter for trial, Maden attempted to plead guilty without an agreement. The trial court swiftly reminded Maden that he could proceed to a probation revocation hearing and a trial for Causes 2150 and 5611, respectively, but Maden insisted that "there's no way around me beating what I did." *Id.* at 12. After confirming multiple times

that Maden wanted to plead guilty, the trial court informed Maden that he would be admitting that he violated his probation and pleading guilty to the crime of Level 6 felony escape. Maden agreed to do so.

[9] The trial court then said the following:

> The Court: Do you understand that by your plea of guilty, you are admitting the truth of all the facts alleged in the information, and upon entry of such plea the Court will proceed with judgment and sentence?
>
> ***
>
> Do you understand the following rights? You're entitled to a speedy and public trial by court or jury. The State must prove beyond a reasonable doubt you committed the offense charged before you could be convicted of it. You have the right to introduce evidence, and testify if you so desire, however; you cannot be compelled to testify against yourself. The Court will subpoena any witnesses needed for your defense. You have the right to object to the introduction of the evidence and confront and cross examine any witnesses used by the state. If the verdict is against you and you are found guilty, you would have the right to an appeal. If you could not afford an attorney, the Court would appoint one to represent you on that appeal. Do you understand these rights?

*Id.* at 13-14. Once more, Maden said that he understood his rights and that he would be forfeiting them by admitting to the violation and pleading guilty. The trial court then confirmed that Maden was admitting that he took off his electronic tracking device, though he knew wearing it was a condition of probation, and that he fled from home detention.

At Maden's February 13, 2019, sentencing hearing, the trial court considered Maden's delinquency and criminal history, which included detainer, juvenile detention for multiple delinquency adjudications involving violent felony battery offenses, resident placement, and the pending charge for escape. The trial court ultimately revoked Maden's probation under Cause 2150 and ordered that he serve the remainder of his previously-suspended sentence in the DOC. Additionally, Maden was sentenced to 850 days under Cause 5611, with credit given for 662 days of time served. Maden now appeals.

# Discussion and Decision

# I. Due Process

First, Maden argues that the trial court violated his due process rights by not advising him of certain rights he would be forfeiting by waiving the probation violation hearing. Specifically, Maden contends that while the trial court properly advised him of the rights he was forfeiting by pleading guilty to Level 6 felony escape under Cause 5611, the trial court failed to separately advise him of the rights he would be forfeiting by admitting that he violated his probation under Cause 2150.

Whether a defendant was denied due process is a question of law that we review de novo. *NOW Courier, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 871 N.E.2d 384, 387 (Ind. Ct. App. 2007). Though Maden did not object to the trial court's alleged failure to advise him of his rights, this Court has held that

"a trial court's failure to ensure that a probationer who admits to a probation violation has received the advisements as required . . . constitutes a fundamental violation of the probationer's due process rights." *Hilligoss v. State*, 45 N.E.3d 1228, 1232 (Ind. Ct. App. 2015). Accordingly, Maden was not required to object at the trial court level in order to preserve this issue for appeal since a failure to advise automatically constitutes fundamental error.

[13] Indiana Code section 35-38-2-3(e) states the following:

> A person may admit to a violation of probation and waive the right to a probation violation hearing after being offered the opportunity to consult with an attorney. If the person admits to a violation and requests to waive the probation violation hearing, the probation officer shall advise the person that by waiving the right to a probation violation hearing the person forfeits the rights provided in subsection (f).

Those rights include the right to have the State prove the probation violation by a preponderance of the evidence, the right to have evidence presented in open court, the right to confront and cross-examine witnesses, and the right to be represented by counsel. *Id.* at -3(f).

[14] Maden argues that before he admitted to violating his probation, the trial court failed to separately advise him of the rights that he would forfeit by not conducting a probation revocation hearing. However, the record plainly shows that the trial court took every possible step to inform him about the rights that he would forfeit by admitting to the violation under Cause 2150 and pleading guilty under Cause 5611.

[15]   First, at the initial December 12, 2018, hearing, the trial court asked Maden if he was present when, presumably, other probationers were being read their rights. Maden responded that he was both present for the advisement of rights and that "I understand them." Tr. Vol. II p. 5. Then, the trial court attempted to determine whether Maden was eligible for a public defender, to which Maden asked if he could represent himself. The trial court advised Maden to seek counsel because he would be held to the same standard as an attorney. Repeatedly, Maden said that he understood and that he still wished to proceed pro se. *See generally id.* at 5-8. Still, the trial court asked Maden questions about his competency, his level of education, and whether it was proper for Maden to proceed pro se. After advising Maden of "the perils of representing [himself][,]" *id.* at 8, the trial court nevertheless appointed stand-by counsel to ensure that Maden had some representation going forward.

[16]   Then, at the January 9, 2019, hearing, before the trial court could set a trial date, Maden asked if he could plead guilty. The trial court informed Maden of the initial consequences of pleading guilty without a trial or a probation revocation hearing and said that "your [Maden's] choices are, set it for trial or you can plead guilty without an agreement. You tell me what you want to do now." *Id.* at 12. Once again, Maden maintained that he wished to plead guilty and admit to the violation without an agreement. Then, the trial court advised Maden that:

> You're entitled to a speedy and public trial by court or jury. The State must prove beyond a reasonable doubt you committed the offense before charged before you can be convicted of it. You have

the right to introduce evidence, and testify if you so desire, however; you cannot be compelled to testify against yourself. The Court will subpoena any witnesses needed for your defense. You have the right to object to the introduction of the evidence and confront and cross examine any witnesses used by the state. If the verdict is against you and you are found guilty, you would have the right to an appeal. If you could not afford an attorney, the Court would appoint one to represent you on that appeal. Do you understand these rights?

*Id.* at 13-14.

[17] The trial court ordered a combined hearing for Causes 2150 and 5611 because the charges were intertwined—Maden's alleged violation of probation also constituted a separate criminal offense. There was no due process requirement that Maden receive a wholly separate advisement of rights associated with his waiver of a probation revocation hearing when he had already been advised of the rights he was forfeiting by not having a criminal trial. And, as a general matter, "because probation revocation does not deprive a defendant of his absolute liberty, but only his conditional liberty, he is not entitled to the full due process rights afforded a defendant in a criminal proceeding." *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997). It was enough that Maden was apprised of the rights that he would ultimately forfeit by pleading guilty to Level 6 felony escape and by admitting that he violated a condition of his probation— namely, taking off his electronic tracking device. And, Maden agreed to try both matters at the same time and admits that he understood his rights at every point in in the proceedings, whether it was in a group setting or conducted individually.

[18] The trial court clearly advised Maden of all the rights he was waiving pursuant to section 35-38-2-3(f). It also repeatedly advised Maden of the consequences of representing himself without an attorney. The trial court was cognizant of the fact that Maden was eager to both proceed pro se and to plead guilty, so it safeguarded Maden's due process rights by appointing stand-by counsel, confirming that Maden understood the consequences of pleading guilty, and executing a written acknowledgment of those rights for Maden to sign. *Butler v. State*, 951 N.E.2d 255, 260 (Ind. Ct. App. 2011) (holding that a trial court's constant reaffirming that defendant understood rights and would be forfeiting them comported with due process requirements for probation revocation). Under these circumstances, Maden's due process rights were not violated, and the trial court did not commit fundamental error.

# II. Appropriateness

[19] Next, Maden argues that the sentence imposed by the trial court for Level 6 felony escape is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). In determining whether the sentence is inappropriate, we will consider numerous factors such as culpability of the defendant, the severity of the crime,

the damage done to others, and a "myriad [of] other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[20] The maximum sentence for a Level 6 felony escape conviction is two and one-half years, and the minimum sentence is six months. Ind. Code § 35-50-2-7(b). The advisory sentence is one year. *Id.* Here, the trial court sentenced Maden to 850 days.

[21] It is difficult to conduct a complete 7(B) analysis given the lack of information about the nature of the offense and the character of the offender. From what we can assess, the trial court sentenced Maden to probation through home detention, recognizing Maden's concerns about not wanting to be immediately placed in an adult facility. Then, the trial court exercised leniency and allowed Maden to remain on probation after the first violation. Soon thereafter, Maden deliberately removed his electronic tracking device and fled from home detention, a clear violation of his probation. Furthermore, Maden has a long delinquency and criminal history, which includes detainer and juvenile delinquency adjudications for felony offenses involving battery and violence. Moreover, while under home detention, Maden twice admitted to violating the conditions of probation—once by illegally consuming alcohol and again by removing his electronic monitoring device, leading to a separate criminal charge. Nothing in the record leads us to conclude that the sentence imposed was inappropriate.

[22]   In sum, we will not revise Maden's sentence pursuant to Indiana Appellate Rule 7(B).

[23]   The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.